UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAMPUS INVESTMENTS, INC., an Ohio corporation, </br></br> Plaintiff, </br></br> v. </br></br> LAKE COUNTY STORMWATER MANAGEMENT COMMISSION, and LAKE COUNTY, ILLINOIS, </br></br> Defendant's. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) </br></br> FILED: MAY 27, 2008 </br> Case No. 08CV3046          TG </br> JUDGE LINDBERG </br> MAGISTRATE JUDGE KEYS |

**COMPLAINT**

COMES NOW Campus Investments, Inc. and for its various claims against the Lake County Stormwater Management Commission and Lake County, Illinois state as follows:

**JURISDICTION AND VENUE**

1.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332 (Diversity of Citizenship Jurisdiction). Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a)(1) ("judicial district where any defendant resides") because the defendants are located within the geographical area of this Court. See 28 U.S.C. § 93(a)(1) (Northern District of Illinois comprises Lake County). Venue is also proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a)(2) because a "substantial part of the events or omissions giving rise to the claim occurred" in Lake County, Illinois.

2.  Plaintiff, Campus Investments, Inc., is an Ohio corporation, engaged in real estate development with its principal office and place of business in Ohio (the "Plaintiff").

3. Defendant, the Lake County Stormwater Management Commission is an agency of Lake County, established under 55 ILCS 5/5-1062 to develop and implement a countywide storm water management plan. Defendant, Lake County is a body corporate and politic, organized and existing under the Counties Code, 55 ILCS 5/1-1001 *et. seq*.

4. To fully understand Lake County's abuse of limited statutory authority as a pretext for environmental protection in incorporated villages, a synopsis is first provided. After back-to-back floods, the Illinois legislature granted counties in northeastern Illinois the power to adopt countywide stormwater management. The legislation allows a village autonomous enforcement once it adopts the county's stormwater ordinance. Lake County instead retains jurisdiction in incorporated areas, and even requires village recertification every three years. Lake County has amended its stormwater regulations seven times and increased its limited stormwater management powers with each of the seven amendments. The most recent amendment includes regulation of wetlands, grading, erosion and planning in incorporated villages, and even requires county licensing of village officers and inspectors.

## STATUTORY LEGISLATION LIMITS LAKE COUNTY'S EXTRATERRITORIAL POWER TO STORMWATER MANAGEMENT

5. Following back-to-back floods in October 1986 and August 1987 in northeastern Illinois, the Illinois General Assembly enacted 55 ILCS 5/5-1062 granting stormwater management powers to northeastern Illinois counties. The legislative purpose is identified as follows: "The **purpose** of this Section is to allow management and mitigation of the effects of urbanization on **stormwater drainage** in metropolitan counties" the "**purpose** of this Section shall be achieved by: (1) consolidating the existing **stormwater**

**management** framework into a united, countywide structure; (2) setting minimum standards for **floodplain and stormwater management**; and (3) preparing a countywide plan for the **management of stormwater runoff**, including the management of natural and man-made drainageways." 55 ILCS 5/5-1062(a).

6. The enabling legislation provides that a "stormwater management planning committee shall be established by county board resolution." 55 ILCS 5/5-1062(b). "The principal duties of the committee shall be to develop a **stormwater management plan** for presentation to and approval by the county board." § 5/5-1062(b). The plan must ensure that stormwater projects will not impact "levels or flows of **stormwaters** in inter-county watersheds" or the capacity "**stormwater** retention facilities" in adjacent counties. § 5/5-1062(c). The county plan must comply with state and federal "standards for **floodplain** management." § 5/5-1062(f). The county stormwater plan must also consider "the cumulative effects of **stormwater** discharges on **flood** levels." § 5/5-1062(d).

7. The enabling legislation provides that the "county board may enact the proposed plan by ordinance." 55 ILCS 5/5-1062(e). The "county board may prescribe by ordinance reasonable rules and regulations for floodplain management and for governing the location, width, course and release rate of all stormwater runoff channels, streams and basins in the county, in accordance with the adopted stormwater management plan." § 5/5-1062(f). However, the "county **shall not enforce** rules and regulations adopted by the county **in any municipality**" that "has a municipal stormwater management ordinance that is consistent with" the county ordinance. § 5/5-1062(k). Also, the county may only "enter upon any lands or waters within the county for the purpose of **inspecting stormwater facilities** or causing the removal of any obstruction to an affected watercourse." § 5/5-1062(j).

8.      In December 1987, Lake County established the Stormwater Management Planning Committee, which evolved into the Lake County Stormwater Management Commission ("SMC"). In June 1990, SMC developed, and Lake County adopted, the Lake County Comprehensive Stormwater Management Plan which was last amended in 2002. See *www.co.lake.il.us/elibrary/publications/smc/StormWater2002CompPlan.pdf*.

## LAKE COUNTY WATERSHED DEVELOPMENT ORDINANCE

9.      On October 18, 1992 Lake County implemented a countywide Watershed Development Ordinance ("WDO") as a component of the Stormwater Management Plan, it was amended seven times, the last amendment was adopted on October 10, 2006. See *www.co.lake.il.us/elibrary/publications/smc/wdo2006_appcmod.pdf*. SMC also adopted a companion Technical Reference Manual to assist in using the WDO; it was last amended in 2002. See *www.co.lake.il.us/smc/regulatory/tac/refmanual.asp.*

10.     The WDO requires certification of villages to allow them to permit projects, and village recertification every three years, and grants authority to SMC to "rescind" a community's certification. (Art. III § B pg. 4). The WDO grants to SMC exclusive authority for development within the floodplain and floodway with a drainage area over 100 acres, and with flood-prone areas greater than 20 acres. (Art. IV § C-D pg. 45-48, Apx. E. § J.2 pg. 85). The WDO's recertification of communities and exclusive retention of permit approval over certain developments is contrary to 55 ILCS 5/5-1062 which provides "the county **shall not enforce rules and regulations**" in any municipality "that has a municipal stormwater management ordinance that is consistent with" the "county plan and ordinance, and is being enforced by the municipal authorities." § 5/5-1062(k). After a village is "the county **shall not** enforce rules and regulations" in the village.

## LAKE COUNTY REGULATES ISOLATED WETLANDS IN VILLAGES

11.     On January 9, 2001 the Supreme Court issued its opinion in *Solid Waste Agency of Northern Cook County v. Army Corps of Eng.*, 531 U.S. 159 (2001) which held that isolated wetlands "not adjacent to open water" are not within the Army Corp's jurisdiction. SMC's Tech Dev. Manual § 5.1 notes that "until January 9, 2001, wetlands were regulated by the Corps under authority of the federal CWA. On that date, the Supreme Court ruled on the *Solid Waste Agency of Northern Cook County* ("*SWANCC*") case and that ruling effectively **removed the Corps' authority to regulate intrastate, isolated waters/wetlands** not tributary to a navigable waterway. These isolated waters/wetlands represent thousands of acres within Lake County that became at risk for destruction with the *SWANCC* ruling. On August 14, 2001, the Lake County Board amended the [Watershed Development] Ordinance to **protect isolated waters/wetlands within the county that were no longer regulated the Corps** and defined them as Isolated Waters of Lake County."

12.     Seven months after the *SWANCC* decision, SMC amended the WDO and redefined wetlands to include the protection of isolated wetlands. The WDO defines "Isolated Waters of Lake County" as all "**wetlands that are not under U. S. Army Corps of Engineers jurisdiction**." (Apx. A pg 71). The WDO requires "**no net loss** of wetlands in Lake County" and instead demand "a net gain of wetlands." (Art. I § B.10 pg. 2). The WDO requires a permit for any impact to isolated wetlands. (Art. IV § E.1.b, pg. 49). The WDO limits impacts to isolated wetlands to one-tenth acre, impacts greater than one-tenth require 6:1 mitigation ratio. (Art. IV § E.4 pg. 52-53). The WDO requires specialists certified by SMC to delineate wetlands. (Art. IV § E.2-3, pg. 49-52). "SMC will perform Certified Wetland Specialist duties for communities" until certification. (Art. III § B.12 pg. 5).

13. Lake County's lack of wetland authority is spelled out in their brochure titled "Wetlands." See www.co.lake.il.us/elibrary/publications/planning/pdfs/wetlands1.pdf. The brochure asks "What if my property is in a village?" The response: "Lake County Engineering and Environmental Services has **jurisdiction only in the unincorporated areas** of Lake County. For **incorporated properties, contact the appropriate municipality**." Lake County's about face after the *SWANCC* decision is an obvious abuse of the county's nonexistent authority to regulated wetlands in incorporated villages.

14. Lake County's change in focus from stormwater, to preservation of isolated wetlands is identified in their website (*www.co.lake.il.us/smc/regulatory/iwp/default.asp*) with the following: "On August 14, 2001, the Lake County Board unanimously approved amendments to the Watershed Development Ordinance to **protect isolated wetlands** that were no longer under regulation by the federal Clean Water Act administered by the U. S. Army Corps of Engineers. . . The most significant new definition is for 'Isolated Waters of Lake County.' The new definition encompasses areas that meet the Corps definition of a wetland, but that are not under Federal jurisdiction."

15. In 1990, SMC's mission was "to provide and maintain a system of stormwater conveyances and controls." (Storm. Mgmt. Plan 2002 § 1.6). In 2002, SMC noted that "many of the regulatory needs identified in the 1990 Comprehensive Plan have since been addressed." (Storm. Mgmt. Plan 2002 § 3.2.4). With stormwater address, SMC amended it's role to include environmental protection. In 2002, "environmental awareness is at a new high. The public now demands restoration" of "wetlands to convert them back into more naturalized states" and these "differences have already changed the way SMC serves its

constituents in Lake County and will continue to chart a new path for SMC. Updating the mission of SMC to be consistent with these changes." (Storm. Mgmt. Plan 2002 § 1.3). "Applications requiring isolated wetland review must also be forwarded to SMC unless the community is specifically certified to perform this review. Currently, only four jurisdictions have applied to be certified for isolated wetland review. Thus, SMC must increase its resources to **provide isolated wetland services for a majority of the county's jurisdictions**." (Storm. Mgmt. Plan 2002 § 4.2.4.1). "Recent adoption of the isolated wetland program will require additional efforts to review wetlands permits and provide expanded regulatory assistance. Jurisdictional wetland determinations are required for all proposed developments in Lake County." (Storm. Mgmt. Plan 2002 § 3.2.4). "SMC has adopted WDO amendments to include protection for isolated wetlands and has responsibility for that functional category. SMC should expand its services for isolated wetlands based on the new WDO provisions." (Storm Mgmt Plan 2002 §4.2.4.6).

16.     WDO's extension of SMC's power to include environmental protection over isolated wetlands in incorporated villages is an abuse of the limited statutory authority over stormwater. The enabling legislation uses the word "stormwater" fifty-one times, the word wetlands is notably absent from 55 ILCS 5/5-1062. Lake County's newly adopted wetlands authority is clearly not found in legislation directed towards stormwater management.

17.     Lake County's efforts to regulate isolated wetlands, in incorporated villages, because the Army Corps was stripped of jurisdiction over isolated wetlands, is an improper extension of power under 55 ILCS 5/5-1062 and in direct conflict with 65 ILCS 5/11-87-3 which provides that whenever "any natural or artificial watercourse" has "been declared non-navigable" by the United States Army Corps of Engineer or the "United States of America

has surrendered, relinquished, or abandoned jurisdiction" and "it becomes **necessary to fill**" any part of the watercourse "in order to properly lay out, establish, open" or "improve streets" the "**corporate authorities have the power**" to "**provide for the filling**" of "any portion of such a watercourse or stream **within the corporate limits** of the city or **village**."

## LAKE COUNTY IS WITHOUT AUTHORITY TO REGULATE WETLANDS WITHIN INCORPORATED VILLAGES

18. The WDO "is **enacted pursuant** to the police powers granted to Lake County by 55 ILCS 5/5-1062 (County) by 65 ILCS 5/1-2-1, 11-12-12, 11-30-8, 11-30-2, 11-31-2, and 615 ILCS 5/5 & 18g." (WDO Art. I § 1, pg. 1).

19. Five of the eight statutory citations (65 ILCS 5/1-2-1, 11-12-12, 11-30-8, 11-30-2, 11-31-2) are all part of the Illinois Municipal Code which grants municipalities certain powers over incorporated municipalities. 65 ILCS 5/1-1-2(2) defines "corporate authorities" to mean the "president and trustees" of a village. 65 ILCS 5/1-2-1 provides that the "**corporate authorities** of each municipality may pass all ordinances." 65 ILCS 5/11-12-12 requires "a certificate of approval by the **corporate authorities**" of evidence that the plat complies with approved "storm and flood water run-off channels and basins." 65 ILCS 5/11-30-8 provides that "**corporate authorities** may prescribe rules and regulations for grading and draining of lots." 65 ILCS 5/11-30-2 provides that "the **corporate authorities of each municipality** may prescribe rules and regulations for the construction" of buildings to lessen "flooding." 65 ILCS 5/11-31-2 allows "**appropriate official of any municipality**" to apply for an injunction forcing compliance with municipal ordinances.

20. Two of the provisions (615 ILCS 5/5 and 18g) grant power only to the Illinois Department of Natural Resources, and not to counties. 615 ILCS 5/5 grants to the Illinois DNR "jurisdiction and supervision over all of the rivers and lakes of the State of Illinois." 615 ILCS 5/18 makes it unlawful to fill "any of the public bodies of water within the State of Illinois" without first receiving a permit from the Illinois DNR; public bodies of water means "streams and lakes capable of being navigated." 615 ILCS 5/29a(a) prohibits "construction in a public body of water" without an Illinois DNR permit. 615 ILCS 5/18g provides that the Illinois DNR shall define and regulated development in the floodway.

21. Of the eight provisions cited as the statutory authority to adopt the WDO, only 55 ILCS 5/5-1062 provides limited power to adopt "reasonable rules and regulations for floodplain management" and the location, width, and release rate of stormwater channels, and retention basins. § 5/5-1062(f). The WDO's wetlands regulations (Art. IV § E pg. 48-56) are not reasonable, and an improper extension of Lake County's limited floodplain and stormwater authority. There is no legislative authority for SMC to regulate isolated wetlands in incorporated municipalities.

22. Lake County's powers over incorporated villages are not unlimited, Lake County must exercise its powers in accordance with pertinent statutory limitations. Lake County seeks to broaden its limited stormwater management powers to include environmental protection and restoration. Lake County's newly found authority to regulate isolated wetlands in incorporated villages because of "increased environmental awareness" relying on a statute enacted in response to flooding that does not even mention the word wetland is a patent and **obvious extension of the limited statutory power** granted to Lake County in 55 ILCS 5/5-1062 over stormwater management.

23. SMC's authority is limited to the enactment of "reasonable rules and regulations for floodplain management and for governing the location, width, course and release rate of all stormwater runoff channels, streams and basins in the county." 55 ILCS 5/5-1062(f). Lake County **has no authority** to regulate isolated wetlands in incorporated villages. The word "wetland" is notably absent from § 5/5-1062. Also, the requirement that "SMC will perform Certified Wetland Specialist duties for communities" until certification (Art.III §B.12 pg 5) conflict with § 5/5-1062(k) by seeking to retain jurisdiction after a municipality has adopted a stormwater ordinance consistent with the WDO.

24. The Village of Graylake has adopted an ordinance consistent with the WDO, therefore, Lake County is not permitted to enforce its stormwater rules and regulations in the village. 55 ILCS 5/5-1062(k) ("the county **shall not** enforce rules and regulations"). Not only does the WDO expand the limited statutory authority granted in § 5/5-1062, the WDO also seeks to **evade the statute's mandatory** command in § 5/5-1062 (k) that villages are self regulated if they adopt an ordinance consistent with the county ordinance.

25. The provisions in the WDO that include the regulation, protection and restoration of isolated wetlands in incorporated villages (WDO Art. IV § E, pg 48-56) are also an improper extension of the power granted to SMC under § 5/5-1062, and thus **void**.

26. The various provisions in the WDO that seek to retain jurisdiction over certified communities are an **improper extension of the statutory power** granted to SMC under § 5/5-1062 and thereby **void**.

**LAKE COUNTY IS WITHOUT AUTHORITY TO LICENSE VILLAGE OFFICERS, WETLAND SPECIALISTS AND EROSION INSPECTORS**

27. The WDO requires that certified communities must employ an enforcement officer who passed the "Lake County Enforcement Officer's Exam" for "the community to remain certified." (Art. III § B.11 pg 5). The enforcement officer must obtain recertification "every three years through the SMC" and take "SMC mandatory training." (Apx. A pg. 69). A "Certified Wetland Specialist" must pass the Certified Wetland Specialist Exam and complete SMC approved wetland delineation course, take SMC mandatory training and seek SMC recertificication every three years. (Apx. A pg. 66). A "Designated Erosion Control Inspector is hired or employed by the applicant, is required for all development that exceeds 10 acres." (Art. IV § B.1.j(2)(b) pg. 29). The erosion inspector must pass the "Designated Erosion Control Inspector Exam" administered by the SMC and take "SMC mandatory training." (Apx. A pg. 67-68). SMC may "suspend a Designated Erosion Control Inspector's listing status for repeated or recurring non-compliance." (Art. II § C pg. 3).

28. SMC's licensing of enforcement officers, wetland specialists and erosion inspectors in incorporated villages is contrary to Lake County's limited authority under 55 ILCS 5/5-1062 which allows the county to "enter upon any lands or waters within the county for the purpose of **inspecting stormwater facilities** or causing the removal of any obstruction to an affected watercourse" only "after 10 days written notice to the owner." § 5/5-1062(j). The SMC licensing of enforcement officers, wetland specialists and erosion inspectors in incorporated villages is also contrary to § 5/5-1062(k) which provides "the county **shall not enforce rules and regulations**" in any municipality "that has a municipal stormwater management ordinance" consistent with the county ordinance.

29.     The WDO provisions that seek to license enforcement officers, wetland specialist, and erosion control inspectors within incorporated villages (Apx. A pg. 66-69) are an improper extension of the power granted to SMC under 55 ILCS 5/5-1062, and in direct contradiction to § 5/5-1062(j) which limits county inspections limited to stormwater facilities and direct contradiction to § 5/5-1062(k) which commands that Villages are self regulated if they adopt a stormwater ordinance consistent with the county ordinance.

## DEVELOPMENT OF AUTUMN RIDGE SUBDIVISION

30.     Plaintiff is the owner of 28.48 acres of real property located at 21157 Rollins Road, in the Village of Grayslake, in Lake County, Illinois (the "Property").

31.     On February 5, 1993, the Property was annexed from unincorporated Lake County to Grayslake. The Property fronts on Rollins Road and is surrounded by residential homes, vacant land and a school. About one half of the property is low lying. On May 17, 2002, the Army Corps of Engineers determined that the wetlands on the property were isolated wetlands, not tributary to navigable waters, and not regulated by the Corps.

32.     On November 6, 2004 the Plaintiff submitted all necessary, plans, application fees and other documents to the Village of Grayslake to subdivide the Property into a 25-lot subdivision. The subdivision left 15.33 acres or 54% of the Property in open space. On November 14, 2005 the Village of Grayslake's Planning Commission recommended approval of a twenty five home **subdivision named Autumn Ridge** on the Property. On February 21, 2006 the Grayslake Board of Trustees voted to approve a Special Use Permit to allow the construction of the 25-lot Autumn Ridge subdivision.

33. On February 7, 2007 the Plaintiff's engineer sent engineering plans for Autumn Ridge to the Grayslake Village Engineer for review. The Village Engineer informed the Plaintiff in a telephone call, that a letter of no wetland impact from SMC is required. On March 9, 2007 the Village Engineer stated in a letter to the Plaintiff's engineer that "SMC has jurisdiction over the isolated wetlands identified on the site, and is responsible for determining whether or not that wetland will be impacted by the proposed activities."

34. The WDO does not require a review from SMC for a so called letter of no wetland impact. This request is an invention of SMC and is being enforced by villages because SMC certifies enforcement officers and the threat of revoking their certification or denying recertification, forces enforcement officers to demand whatever SMC requests even a letter of no wetland impact that is not even required or addressed in the WDO.

35. On March 9, 2007 the Plaintiff sought approval from SMC for a no impact letter. On April 2, 2007 SMC wrote to the Plaintiff's engineer that "SMC's review of the proposed development for potential isolated wetland impacts is required prior to the Village's issuance" of a permit. The one wetland on the property is an isolated wetland "subject to regulation by SMC under the WDO." The letter noted that "it does not appear the [isolated wetland] will be directly impacted by the development (i.e., filled). However, a wetland hydrology analysis is required to determine if indirect impacts to the [isolated wetland] may occur. If no direct or indirect impacts to the [isolated wetland] will occur, a Letter of No Wetland Impact Determination ("LONI") can be issued by SMC."

36. On April 10, 2007 the County and the Village entered into an amended sewage agreement to allow sanitary sewer connection for twenty five homes in the Autumn Ridge subdivision. The Property was now ready for development.

37. On July 24, 2007 the Plaintiff's engineer submitted plans to the Village of Grayslake to stockpile soil on the Property. The Village Engineer once again requested that the Plaintiff first obtain a letter of no wetland impact determination from SMC.

38. On August 2, 2007 the Plaintiff's engineer submitted documents demanded by SMC in an effort to obtain a letter of no wetland impact. On August 17, 2007 SMC wrote to the Plaintiff's engineer that a letter of no wetland impact determination "from SMC's is required prior to the Village's issuance of a development permit." The letter also stated that SMC would inspect the grading and erosion on the property, and that prior to issuance of the letter of no wetland impact SMC requires a deposit "to cover the cost of potential wetland compliance inspections." The letter sought a pre-construction meeting onsite "in order to **inspect the installed wetland protective measures**." The "deposit, minus any assessed **wetland inspection fees**, will be returned upon your written request following permanent site stabilization and a **final site inspection by SMC**."

39. On January 9, 2008 the Plaintiff's engineer once again submitted various documents demanded by SMC in an effort to obtain a no impact letter. On February 13, 2008 SMC wrote to the Plaintiff's engineer and again noted that "SMC's approval of isolated wetland impacts (or a no wetland impact determination) is required prior to the Village's issuance" of a permit. The letter also repeated the prior statement that SMC requires a deposit "to cover the cost of potential **wetland compliance inspections**. . . .in order to inspect the installed wetland protective measures (e.g., silt fence). . . . The remaining deposit, minus any **assessed wetland inspection fees**, will be returned upon your written request following permanent site stabilization and a **final site inspection by SMC**."

40. On May 24, 2008 the Plaintiff installed silt fence at the site in an effort to commence the importation of fill on the Property. On May 27, 2008 SMC inspected the Property and informed the Plaintiff to stop all work. Damages to the Plaintiff in halting development of the Property will exceeds One Million Dollars.

## LAKE COUNTY IS WITHOUT AUTHORITY TO REGULATE WETLANDS, GRADING AND EROSION IN THE AUTUMUN RIDGE SUBDIVISION

41. Lake County's powers over stormwater planning in incorporated villages is limited to stormwater planning, and Lake County must exercise its powers in accordance with pertinent statutory limitations. The WDO does not require a letter of no wetland impact. Additionally, SMC **has no authority** to regulate isolated wetlands in incorporated villages. The word "wetland" is notably absent from 55 ILCS 5/5-1062. The provisions in the WDO that include the regulation of isolated wetlands in incorporated villages (Art IV § E pg 48-56) is an improper extension of the power granted to SMC under § 5/5-1062, and thus **void**.

42. The WDO also conflicts with 55 ILCS 5/5-1062(k) by seeking to retain jurisdiction over isolated wetlands in incorporated villages. Not only does the WDO expand the limited statutory authority granted in § 5/5-1062, the WDO also seeks to **evade the statute's mandatory** command in § 5/5-1062(k) that Villages are self regulated if they adopt a stormwater ordinance consistent with the county ordinance.

43. The provisions in the WDO that seek to grant to SMC authority to review grading and erosion control inspections over incorporated villages is an **improper extension of the statutory power** granted to SMC under 55 ILCS 5/5-1062 and thereby **void**.

44. The WDO provisions that seek to inspect erosion are an improper extension of the power granted to SMC under § 5/5-1062, and in direct contradiction to § 5/5-1062(j) which limits county inspections limited to stormwater facilities and direct contradiction to § 5/5-1062(k) by seeking to retain jurisdiction after a municipality has adopted a stormwater ordinance consistent with the WDO.

## COUNT 1
## DECLARATORY RELIEF

COMES NOW Campus Investments, Inc., and files its complaint for Declaratory Relief against the defendant, Lake County and SMC and states as follows:

45. An actual controversy has arisen and now exists between the Plaintiff and defendant's regarding their respective rights and duties. The Plaintiff contends that the defendants lack authority to regulate isolated wetlands and inspect the development of the Autumn Ridge subdivision. Defendant's contends they have this authority under the WDO.

46. The Plaintiff desires a judicial determination of its rights and duties, and a declaration that Lake County and SMC is without authority to regulate isolated wetlands, and inspect development of the 25-lot Autumn Ridge subdivision, in the Village of Grayslake.

47. A judicial declaration is necessary and appropriate at this time under all the circumstances so that the Plaintiff may determine its rights and duties. The Plaintiff has no available administrative remedies by which to challenge the refusal by the SMC to regulate developments in incorporate villages well outside its limited legislative authority.

WHEREFORE, the Plaintiff Campus Investments, Inc., demands judgment against defendant Lake County for the following:

(a). A declaration that Lake County and SMC is without authority to regulate isolated wetlands and inspect the development of the 25-lot Autumn Ridge subdivision, in the Village of Grayslake;

(b). That this Court reserve and retain jurisdiction to prevent Lake County or SMC, its officers, agents and employees from interfering with the rights of the Plaintiffs, or anyone claiming by through or under the Plaintiffs, to develop the 25-lot Autumn Ridge subdivision;

(c). Costs of this suit including reasonable attorneys fees; and such other and further relief this Court may deem just and proper.

## COUNT 2
## INJUNCTIVE RELIEF

COMES NOW Campus Investments, Inc., and files its complaint for Injunctive Relief against the defendants, Lake County and SMC states as follows:

48. The previous paragraphs of this Complaint are incorporated into this cause of action by this reference as though fully set forth herein.

49. Unless Lake County and SMC's wrongful conduct is restrained and enjoined, the Plaintiff will suffer great and irreparable harm, and will be forced to file bankruptcy.

50. The Plaintiff has no adequate remedy at law for the injuries which the Plaintiff has suffered and will continue to suffer in the future unless Lake County and SMC's wrongful conduct is restrained and enjoined. It will be impossible for the Plaintiff to determine the precise amount of damages, and even if those damages are ascertained it may be too late to save the Plaintiff from imminent demise in bankruptcy.

WHEREFORE, the Plaintiff Campus Investments, Inc., demands judgment against defendant Lake County and SMC for the following:

(a). Issuance of a preliminary injunction, followed by a permanent injunction, enjoining Lake County and SMC, and anyone acting on its behalf, from regulating the wetlands and inspecting the development for the 25-lot Autumn Ridge subdivision;

(b). Costs of suit including reasonable attorneys fees and such other and further relief this Court may deem just and proper.

/s/ Sebastian Rucci
Sebastian Rucci (ND IL No. 90785689)
40 The Ledges, 3C
Youngstown, Ohio 44514
Phone: (330) 707-1182
Fax:    (330) 707-1882
Email: SebRucci@Gmail.com
Attorney for the Plaintiff