# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CAMPUS INVESTMENTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08-cv-3046 |
| v. | ) | |
| | ) | Judge George W. Lindberg |
| LAKE COUNTY STORMWATER | ) | |
| MANAGEMENT COMMISSION, and | ) | Magistrate Judge Arlander Keys |
| LAKE COUNTY, ILLINOIS, | ) | |
| | ) | |
| Defendant's. | ) | |
| | ) | |

## VERIFIED AMENDED COMPLAINT

COMES NOW Campus Investments, Inc. and pursuant to Fed. R. Civ. P. 15(a)(1)(A) (plaintiff may file one amendment "as a matter of course" if the defendants have not filed a responsive pleading) files its amended complaint alleging various claims against, the Lake County Stormwater Management Commission, and Lake County, and states as follows:

### JURISDICTION AND VENUE

1.     There are multiple bases for this court's jurisdiction. This Amended Complaint alleges violations of Plaintiff's rights under the United States Constitution, hence, this court has original "federal question" jurisdiction pursuant to 28 U.S.C. §1331 over those claims. The Amended Complaint also alleges violations of the Plaintiff's rights under the Federal Civil Rights Act, 42 U.S.C. § 1983, to redress the deprivation, under color of law, of rights secured by the United States Constitution, giving this court original jurisdiction under 28 U.S.C. §1343(a)(3) over those claims. This court also has jurisdiction pursuant to 28 U.S.C. § 1332 (Diversity of Citizenship Jurisdiction), the parties are diverse and the amount in controversy is exceeds $75,000.

2.      This Amended Complaint alleges violation of the guarantee embodied in the Illinois Constitution Art. 1 § 15 (prohibits taking private property without just compensation) and this court has supplemental jurisdiction over that claim pursuant to 28 U.S.C. §1367(a) because that claim is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution."

3.      Personal jurisdiction and venue of the defendants is predicated upon 28 U.S.C. § 1391(a)(1) ("judicial district where any defendant resides") because the defendants are located in, and transact their affairs in Lake County, Illinois which is located within the geographical area of this court. See 28 U.S.C. § 93(a)(1) (Northern District of Illinois comprises Lake County). Venue is also proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claims occurred in Lake County, Illinois.

## PLAINTIFF AND DEFENDANTS

4.      Plaintiff, Campus Investments, Inc., is an Ohio corporation, engaged in real estate development with its principal office and place of business in Ohio (the "Plaintiff").

5.      Defendant, the Lake County Stormwater Management Commission is an agency of Lake County, established under 55 ILCS 5/5-1062 to develop and implement a countywide storm water management plan.

6.      Defendant, Lake County, is a body corporate and politic, organized and existing under the Counties Code, 55 ILCS 5/1-1001 *et. seq*. The Lake County Stormwater Management Commission and Lake County are collectively referred to as "the Defendants."

## LAKE COUNTY WATERSHED DEVELOPMENT ORDINANCE

7.      The Illinois General Assembly enacted 55 ILCS 5/5-1062 in response to flooding in northeastern Illinois, granting stormwater management powers to northeastern Illinois counties. The legislative purpose is identified as follows: "The **purpose** of this Section is to allow management and mitigation of the effects of urbanization on **stormwater drainage** in metropolitan counties" the "**purpose** of this Section shall be achieved by: (1) consolidating the existing **stormwater management** framework into a united, countywide structure; (2) setting minimum standards for **floodplain and stormwater management**; and (3) preparing a countywide plan for the **management of stormwater runoff**, including the management of natural and man-made drainageways." § 5-1062(a).

8.      The enabling legislation provides that a "stormwater management planning committee shall be established by county board resolution." 55 ILCS 5/5-1062(b). "The principal duties of the committee shall be to develop a **stormwater management plan** for presentation to and approval by the county board." § 5-1062(b). The plan must ensure that stormwater projects will not impact "levels or flows of **stormwaters** in inter-county watersheds" or the capacity "**stormwater** retention facilities" in adjacent counties. § 5-1062(c). The county plan must comply with state and federal "standards for **floodplain** management." § 5-1062(f). The county stormwater plan must also consider "the cumulative effects of **stormwater** discharges on **flood** levels." § 5-1062(d).

9.      The enabling legislation provides that the "county board may enact the proposed plan by ordinance." 55 ILCS 5/5-1062(e). The "county board may prescribe by ordinance reasonable **rules and regulations for floodplain management** and for governing the location, width, course and release rate of **all stormwater runoff channels, streams and**

**basins in the county**, in accordance with the adopted stormwater management plan." § 5-1062(f). However, the "county **shall not enforce** rules and regulations adopted by the county **in any municipality**" that "has a municipal stormwater management ordinance that is consistent with" the county ordinance. § 5-1062(k). Also, the county may only "enter upon any lands or waters within the county for the purpose of **inspecting stormwater facilities** or causing the removal of any obstruction to an affected watercourse." § 5-1062(j).

10.     Pursuant to 55 ILCS 5/5-1062 Lake County established the Lake County Stormwater Management Commission ("SMC"). In June 1990, SMC developed, and Lake County adopted, the Comprehensive Stormwater Management Plan which was last amended in 2002. See *www.co.lake.il.us/elibrary/publications/smc/StormWater2002CompPlan.pdf*.

11.     On October 18, 1992 Lake County implemented the Watershed Development Ordinance ("WDO"). It was amended seven times; the last amendment was adopted on October 10, 2006. See www.co.lake.il.us/elibrary/publications/smc/wdo2006_appcmod.pdf.

12.     The WDO requires village certification, and recertification every three years, and allows SMC to "rescind" a community's certification. (Art. III § B pg. 4).

13.     The WDO grants to SMC exclusive authority for development within the floodplain and floodway with a drainage area over 100 acres, and with flood-prone areas greater than 20 acres. (Art. IV § C-D pg. 45-48).

14.     The WDO's recertification of communities and exclusive retention of permit approval over certain developments is contrary to 55 ILCS 5/5-1062(k) which provides "the county **shall not enforce rules and regulations**" in any municipality "that has a municipal stormwater management ordinance that is consistent with" the county's regulations.

## LAKE COUNTY IMPROPERLY ENLARGED ITS STORMWATER
## AUTHORITY BY REGULATING WETLANDS IN INCORPORATED VILLAGES

15.     On January 9, 2001 the Supreme Court issued *Solid Waste Agency of Northern Cook County v. Army Corps of Eng.*, 531 U.S. 159 (2001) which held that isolated wetlands are not within the Army Corp's jurisdiction. The Army Corps of Engineers has determined that the wetlands on the Plaintiff's property are isolated wetlands not regulated by the Corps.

16.     SMC's Technical Reference Manual § 5.1 notes that "until January 9, 2001, wetlands were regulated by the Corps under authority of the federal CWA. On that date, the Supreme Court ruled on the *Solid Waste Agency of Northern Cook County* case and that ruling effectively **removed the Corps' authority to regulate intrastate, isolated waters/wetlands** not tributary to a navigable waterway…On Aug.14, 2001, the Lake County Board amended the [Watershed Development] Ordinance to protect isolated waters/**wetlands within the county that were no longer regulated the Corps** and defined them as Isolated Waters of Lake County." (see *www.co.lake.il.us/smc/regulatory/tac/refmanual.asp*).

17.     Seven months after the *SWANCC* decision, SMC amended the WDO and defined isolated wetlands as "Isolated Waters of Lake County" and defined them as all "wetlands that are not under U. S. Army Corps of Engineers jurisdiction." (Apx. A pg 71). The WDO required "**no net loss** of wetlands in Lake County." (Art. I § B.10 pg 2). "SMC will perform Certified Wetland Specialist duties for communities" until certification. (Art III § B.12 pg 5). The WDO requires isolated wetlands to remain in their natural state, and limits impacts to 1/10 acre; impacts greater than 1/10 require mitigation. (Art IV § E.4 pg 52-53). The WDO requires a permit for impacts to isolated wetlands, and specialists certified by SMC to delineate the wetlands. (Art. IV § E.1-3, pg 49-52).

18.     SMC also requires a letter of no wetland impact, including a review fee for a letter of no impact. However, the so called letter of no wetland impact is not found in the WDO. Nonetheless, SMC demands the same, in effect requiring that every property with an isolated wetland in Lake County will go through an SMC review, either to obtain a permit for development, or to obtain a letter of no wetland impact. SMC will effectively regulate every isolated wetland in Lake County, including the wetlands in incorporated villages.

19.     Lake County's brochure titled "Wetlands" informs landowners that "Lake County Engineering and Environmental Services has **jurisdiction only in the unincorporated areas of Lake County**. For incorporated properties, contact the appropriate municipality." (see www.co.lake.il.us/elibrary/publications/planning/pdfs/wetlands1.pdf.)

20.     In 1990, SMC's mission was "to provide and maintain a system of stormwater conveyances and controls." (Storm. Mgmt. Plan 2002 § 1.6). In 2002, SMC confirmed that "many of the regulatory needs identified in the 1990 Comprehensive Plan have since been addressed." (Plan § 3.2.4). With stormwater addressed, SMC started including environmental protection in its regulations. (Plan § 1.3). "Jurisdictional wetland determinations are required for all proposed developments in Lake County." (Plan § 3.2.4). "Applications requiring isolated wetland review must also be forwarded to SMC unless the community is specifically certified to perform this review. Currently, only four jurisdictions have applied to be certified for isolated wetland review. Thus, SMC must increase its resources to **provide isolated wetland services for a majority of the county's jurisdictions**." (Plan § 4.2.4.1).

## LAKE COUNTY IS WITHOUT EXTRATERRITORIAL AUTHORITY
## TO REGULATE WETLANDS IN INCORPORATED VILLAGES

21.    The enabling legislation **uses the word "stormwater" fifty-one times**; the word wetlands is notably absent from § 5-1062. The WDO's wetlands regulations are an unlawful expansion of Lake County's limited statutory power over stormwater management granted by 55 ILCS 5/5-1062, and WDO's wetlands regulations (Art. IV § E pg. 48-56) are invalid, unconstitutional and unenforceable as applied to Plaintiff's property.

22.    The Village of Graylake has adopted the stormwater regulations provided for in the WDO; therefore, Lake County is not permitted to enforce its stormwater regulations in the village. 55 ILCS 5/5-1062(k) ("the county **shall not** enforce rules and regulations"). The WDO provisions that seek to retain jurisdiction over floodplains are in direct conflict with § 5-1062(k) allowing Villages to be self regulated if they adopt a stormwater ordinance consistent with the county's, and an **improper extension of the statutory power** under § 5-1062. The WDO provisions that seek to retain jurisdiction over floodplains in incorporated villages that adopt a stormwater ordinance consistent with the county's (Art. IV § C-D pg 35-48) are invalid, unconstitutional and unenforceable as applied to Plaintiff's property.

23.    The WDO provisions that seek to inspect erosion and sediment control (Art. IV § B.j pg 25) are an improper extension of the power granted to SMC under 55 ILCS 5/5-1062, and in conflict with § 5-1062(j) which limits county inspections to stormwater facilities and in conflict with § 5-1062(k) by seeking to retain jurisdiction after a municipality has adopted a stormwater ordinance consistent with the WDO. The provisions in the WDO that seek to grant to SMC authority to inspect erosion within incorporated villages, after a municipality has adopted a stormwater ordinance, are invalid, unconstitutional and unenforceable as applied to the Plaintiff's property.

## LAKE COUNTY IS WITHOUT EXTRATERRITORIAL AUTHORITY
## TO REGULATE SUBDIVISIONS IN INCORPORATED VILLAGES

24.     The County Code grants to counties the power to enact regulations to approve subdivisions "**not being within** any city, **village** or incorporated town." (55 ILCS 5/5-1041). Counties have the power to regulate the "construction and alteration of all buildings" in areas "located **outside the limits** of cities, **villages** and incorporated towns." (55 ILCS 5/5-1063). Counties have power to "divide the entire county **outside the limits** of such cities, **villages** and incorporated towns" into zoning districts. (55 ILCS 5/5-12001).

25.     The Municipal Code grants to villages exclusive authority to exercise zoning, subdivision and building code authority "**within the corporate limits**." (65 ILCS 5/11-13-1). Villages have the power to establish "standards of design for subdivisions" including requirements for "storm water drainage." (65 ILCS 5/11-12-5). Villages have zoning power within "**within the corporate limits**" of the municipality, including the power to "establish, regulate and limit. . . storm or floodwater runoff channel or basin." (65 ILCS 5/11-13-1).

26.     The County Code subdivision authority (55 ILCS 5/5-1041) specifically authorizes regulations enacted pursuant to § 5-1062 as follows: "The rules and regulations may include . . . such reasonable requirements with respect to **floodplain and stormwater management** as may be **established by the County Stormwater Management Committee** established under Section 5-1062 of this Code." However, these rules only apply to "land, **not being within** any city, **village** or incorporated town." § 5-1041. This section confirms that Lake County's authority is limited to "floodplain and stormwater management."

27.     Villages have the power to determine whether the "plat of subdivision" complies with Village regulations. (65 ILCS 5/11-12-8). The WDO instead regulates

planning within villages, in complete disregard for the exclusive authority granted to Villages to regulated developments within their borders, and commands that a "community's planning commission or corporate authority shall not approve any preliminary" or "final PUD or Plat of subdivision **located inside or outside its corporate limits** unless such PUD or Plat, at a minimum, meets the performance standards of the Lake County Watershed Development Ordinance." (WDO Art. IV § B.1.a.(7) and (8) pg. 10).

28.    Lake County has no powers of extraterritorial zoning within the corporate limits of any village. The County Code provides that "[a]ny zoning **ordinance enacted by** a city, **village** or incorporated town **shall supersede**, with respect to **territory within the corporate limits of the municipality**, any county zoning plan otherwise applicable." (55 ILCS 5/5-12001). Also, the Plaintiff's property was annexed to the Village of Grayslake fifteen years ago, and according to the Municipal Code, the "annexing unit shall thereafter **exercise all zoning powers and regulations** over the annexed area." (65 ILCS 5/11-13-1).

29.    Lake County's efforts to regulate isolated wetlands, in incorporated villages, because the Army Corps was stripped of jurisdiction over isolated wetlands, is an improper extension of power under 55 ILCS 5/5-1062 and in direct conflict with 65 ILCS 5/11-87-3 which provides that whenever "any natural or artificial watercourse" has "been declared non-navigable" by the United States Army Corps of Engineer or the "United States of America has surrendered, relinquished, or abandoned jurisdiction" and "it becomes **necessary to fill**" any part of the watercourse "in order to properly lay out, establish, open" or "improve streets" the "**corporate authorities have the power**" to "**provide for the filling**" of "any portion of such a watercourse or stream **within the corporate limits** of the city or **village**."

30.    The Defendant's regulations of wetlands is akin to regulating zoning and subdivisions within incorporated villages. However, the County Code does not grant to Lake County any extraterritorial powers over Village zoning or subdivisions. The County Code and Municipal Code specifically prohibits any such authority within incorporated villages.

## DEVELOPMENT OF AUTUMN RIDGE SUBDIVISION

31.    Plaintiff is the owner of 28.48 acres of real property located at 21157 Rollins Road, in the Village of Grayslake, in Lake County, Illinois (the "Property"). On February 5, 1993, the Property was annexed from unincorporated Lake County to Grayslake. The property is vacant, with seasonal farming. The Property is surrounded by residential homes, other vacant land and a school. The Property fronts onto Rollins Road and has a curb cut along the road and access to the Property has been from Rollins Road for many decades.

32.    About one half of the property is low lying and an isolated wetland. On May 17, 2002, the Army Corps of Engineers issued a letter stating "there are no waterways, wetlands or other areas considered 'waters of the United States' under Corps of Engineers jurisdiction at the site" and Corps permit "is not required." (Letter attached as Exhibit A).

33.    Sanitary sewers are located only seven hundred feet from the Property, and the sewers have sufficient capacity for the development of the Property. However, because the Property was annexed after the Village entered into an agreement to use Lake County's sewer mains, the development of the Property would require an expansion of Lake County's sewage agreement with the Village. The regulation of sanitary sewer mains is a thinly disguised subterfuge for Lake County to regulate land use within incorporated villages. Attempts to develop the Property were unsuccessful because Lake County would not expand the sewer boundary. Lake County used the sewer expansion as an effort to control the development of

the property within the incorporated village. After repeated requests over fourteen years, and after the Plaintiff agreed to various concessions, Lake County amended the Village's sewage agreement to allow sewer connection for twenty five homes on the Plaintiff's Property.

34.    On February 21, 2006 the Grayslake Board of Trustees voted to approve a Special Use Permit to subdivide the Property into a 25-lot **subdivision named Autumn Ridge** ("Autumn Ridge"). The subdivision left 54% of the Property in open space (see subdivision plat attached as Exhibit B). Autumn Ridge is a multi-million dollar investment; the construction build-out will exceed $15 Million. Autumn Ridge has no adverse impact on nearby properties, and will instead increase the values of nearby properties.

## SMC DEMANDS A PERMIT TO DEVELOP AUTUMN RIDGE

35.    On March 17, 2006 SMC sent a letter to the Plaintiff stating: "This letter is to notify you that development at the above referenced site will require a Watershed Development Permit" from SMC or the Village. (Letter attached as Exhibit C).

36.    On March 9, 2007 the Plaintiff sought approval from SMC for a no impact letter. On April 2, 2007 SMC sent a letter informing the Plaintiff that "**SMC's review** of the proposed development for potential isolated wetland impacts is **required** prior to the Village's issuance" of a permit. The letter stated that the one wetland on the property is an isolated wetland "subject to regulation by SMC under the WDO" and "it does not appear the [isolated wetland] will be directly impacted by the development (i.e., filled). However, a wetland hydrology analysis is required to determine if **indirect impacts** to the [isolated wetland] may occur. If **no direct or indirect impacts** to the [isolated wetland] will occur, a Letter of No Wetland Impact Determination can be issued by SMC." (Letter at Exhibit D).

37.     On August 17, 2007 SMC sent a letter informing the Plaintiff that a letter of no wetland impact "from SMC's is required prior to the Village's issuance of a development permit" and SMC will also make "wetland compliance inspections" and desired an onsite meeting "in order to inspect the installed wetland protective measures." (Letter at Exhibit E).

38.     On February 13, 2008 SMC sent a letter informing the Plaintiff that "SMC's approval of isolated wetland impacts (or a no wetland impact determination) is required prior to the Village's issuance" of a permit, and that 'SMC cannot proceed further with the isolated wetland review" until SMC makes a field verified determination of the wetland boundary. The letter also repeated that SMC would also inspect the erosion. (Letter attached as Ex. F).

39.     It became apparent to the Plaintiff that SMC desired a redesign of the approved Autumn Ridge subdivision, by requiring more than 54% of the Property be left in its natural state. The loss of additional acreage will make residential development of the Plaintiff's Property financially unfeasible and destroy all economical value of the Property.

40.     SMC did not make any individualized determination that the preservation of more than 54% of the Property is related both in nature and extent to the impact of the proposed development. The burden of preserving more than 54% of the Property is not roughly proportional, nor directly proportional, to the development's impact.

41.     SMC also did not make any individualized determination that the preservation of the low quality wetlands on the Property is related both in nature and extent to the impact of the proposed development. The burden of preserving the low quality wetlands on the Property is not roughly proportional, nor directly proportional, to the development's impact.

### DEFENDANTS STOP DEVELOPMENT WORK AT AUTUMN RIDGE

42.    The grading of Autumn Ridge will require the importation of over 100,000 cubic yards of fill. The fill is only available when a construction site has excess and must be imported when requested, or the fill is taken to other developments ready for importation.

43.    In early May 2008, the Plaintiff's grading contractor located fill ready for import; however, it had to be taken by early June 2008, or the fill would be given to other developers. On May 24, 2008 the Plaintiff's contractor installed a silt fence at the perimeter of the open space for erosion control in anticipation of commencing the importation of fill.

44.    On May 27, 2008 Glenn Westman, the Principal Wetland Specialist for SMC inspected the Property and informed the Plaintiff that the work being done was in violation of SMC and to "stop all work." Later that day, the Plaintiff filed the Complaint in this case.

### LAKE COUNTY DENIES ACCESS TO AUTUMN RIDGE

45.    The Property has been farmed for decades, and access has always been from Rollins Road. Since Rollins Road is regulated by Lake County, the Plaintiff submitted plans to the Lake County Department of Highway and Traffic ("Lake County DOT") for approval to allow access for the Autumn Ridge subdivision to Rollins Road. This is known as a major access permit. On October 23, 2007, Lake County approved the major access permit, allowing Autumn Ridge access to Rollins Road. This required the simple re-striping of the center median. This approval was consistent with the promise by Lake County DOT on April 29, 2003 when Lake County acquired right-of-way from the prior owner of the land and in return agreed to "grant one major access to the property." (Letter attached as Exhibit G).

46.    After the lawsuit was filed in this case, the Plaintiff's grading contractor, Adam Fiala, contacted Lake County DOT to obtain the major access permit. Betsy Duckert, with Lake County DOT, informed him that the States Attorney informed her of the legal matter regarding the Property, and she would not issue the major access permit until final plans were approved by the Village, and this required wetland approval from SMC. See Ex. D ("SMC's review of . . isolated wetland impacts is required prior to the Village's issuance" of a permit); Ex. E (approval "from SMC's is required prior to the Village's issuance of a development permit"); Ex. F ("SMC's approval" is "required prior to the Village's issuance" of a permit).

47.    After being informed of Lake County DOT's refusal to issue the major access permit, the Plaintiff requested a temporary access permit, known as a conditional access from Lake County DOT for access to Rollins Road. The conditional access did not seek to do the approved re-striping which is required by the major access permit; it simply sought access the Property to commence importation of the fill as approved by the Village. The request for conditional access complied with all Lake County requirements and a conditional access permit is granted as a matter of right to allow landowners to undertake construction before they take out the permit to do work on the county's roadways.

48.    On June 13, 2008 the Plaintiff was informed by his grading contractor, Adam Fiala, that Betsy Duckert, with the Lake County DOT, denied the conditional access to the Property and that a letter would follow. She also informed him that she was aware of legal matter regarding the Property, and not to bring fill onto the Property or the "States Attorney would be contacted." She also repeated that she would not approve access to the Property until final plans were approved by the Village, which in effect requires that the isolated wetlands must first be approved by SMC.

## SMC'S LICENSES VILLAGES, ENFORCEMENT OFFICERS, WETLAND SPECIALISTS AND EROSION INSPECTORS FOR RETALIATORY PURPOSES

49.     The WDO requires village recertification every three years, and grants authority to SMC to "rescind" a community's certification. (Art. III § B pg. 4). The WDO requires certified communities to employ an enforcement officer who passed the "Lake County Enforcement Officer's Exam" for "the community to remain certified." (Art. III § B.11 pg 5). The enforcement officer must obtain recertification "every three years through the SMC" and take "SMC mandatory training." (Apx. A pg. 69). A "Certified Wetland Specialist" must pass the Certified Wetland Specialist Exam and complete SMC approved wetland delineation course, take SMC mandatory training and seek SMC recertificication every three years. (Apx. A pg. 66). A "Designated Erosion Control Inspector is hired or employed by the applicant, is required for all development that exceeds 10 acres." (Art. IV § B.1.j(2)(b) pg. 29). The erosion inspector must pass the "Designated Erosion Control Inspector Exam" administered by the SMC and take "SMC mandatory training." (Apx. A pg. 67-68). SMC may "suspend a Designated Erosion Control Inspector's listing status for repeated or recurring non-compliance." (Art. II § C pg. 3).

50.     SMC's licensing of enforcement officers, wetland specialists and erosion inspectors in incorporated villages is contrary to Lake County's limited authority under 55 ILCS 5/5-1062 which allows the county to "enter upon any lands or waters within the county for the purpose of **inspecting stormwater facilities** or causing the removal of any obstruction to an affected watercourse" only "after 10 days written notice to the owner." § 5-1062(j). The SMC licensing of enforcement officers, wetland specialists and erosion

inspectors in incorporated villages is also contrary to § 5-1062(k) which provides "the county **shall not enforce rules and regulations**" in any municipality "that has a municipal stormwater management ordinance" consistent with the county ordinance.

51.     The WDO licensing and recertification is provided to allow SMC to retaliate against those who exercise their constitutional rights and was enacted to chill others from so exercising theirs constitutional rights. The Defendants can take retaliatory action against any village, or licensed professional for exercising their constitutional right to seek judicial relief. The licensing and recertification intimidate and chill villages and professionals from seeking judicial relief. The WDO recertification of villages and professionals is used as a weapon to revoke the certification of those who fails to follow the ever expanding authority of SMC.

52.     SMC uses the licensing recertification of villages, enforcement officers, wetland specialists, and erosion inspectors as weapon and can revoke certification or denying recertification, to demand compliance with regulations within incorporated villages and well outside their limited statutory authority.

## PLAINTIFF'S DAMAGES ARE SUBSTANTIAL AND IRREPARABLE

53.     The fill material that is required for the development of the Autumn Ridge subdivision is only available when a construction site has excess and unless the Plaintiff imports the fill, the Plaintiff will lose the material to other developments. Considering further that fill import will take over three months to complete, any further delay by Lake County will result in the loss of this year's building season. This will result in substantial damages to the Plaintiff amounting to hundreds of thousands of dollars. The earth fill is now being

given to other developers; however, if the Plaintiff can start importing this week, they can obtain what is left of the fill.

54.     Campus Investments has invested over $1 Million Dollars in the development of the Property and Campus Investments has contracted to sell the development. However, due to the present halting of the development by the Defendants, the buyer will not wait any longer to commence the development. Plaintiff has worked for well over one year building a relationship with the current prospective buyer of the Autumn Ridge subdivision. Given the current softness of the real estate market, finding an alternative buyer in time to prevent the financial demise of Plaintiff is highly unlikely.

55.     Campus Investments has worked tirelessly on the development of Autumn Ridge for over four years, and unless the Defendants are ordered to stay out of the incorporated Village's planning and subdivision developments, the Plaintiff will have to seek Bankruptcy Court protection, because it does not have the financial resources to keep the Property idle pending final resolution of this case. Bankruptcy will limit the Plaintiff's ability to compete in the marketplace in the future and will severely limit its ability to maintain any level of business in the present. The interference by SMC has a devastating effect on the Plaintiff's financial condition, and the Plaintiff will suffer imminent, irreparable harm if the development of Autumn Ridge does not commence immediately.

56.     As a direct and proximate result of the actions of the Defendant's as stated above, the Plaintiff has been damaged in an amount to be determined upon trial of this action, which amount exceeds $1 Million Dollars.

## COUNT 1 (DECLARATORY RELIEF)

COMES NOW the Plaintiff and files its complaint for Declaratory Relief against the Defendant's and states as follows:

57.     The previous paragraphs of this Amended Complaint are incorporated into this cause of action by this reference as though fully set forth herein.

58.     An actual controversy has arisen and now exists between the Plaintiff and Defendants regarding their respective rights and duties. The Plaintiff contends that the Defendants lack authority to regulate isolated wetlands and inspect the development of the Autumn Ridge subdivision. Defendant contends they have this authority under the WDO.

59.     The Plaintiff desires a judicial determination of its rights and duties, and a declaration that Lake County and SMC is without authority to regulate isolated wetlands, and inspect development of the 25-lot Autumn Ridge subdivision, in the Village of Grayslake.

60.     A judicial declaration is necessary and appropriate at this time under all the circumstances so that the Plaintiff may determine its rights and duties. The Plaintiff has no available administrative remedies by which to challenge the refusal by the SMC to regulate developments in incorporated villages well outside its limited legislative authority.

WHEREFORE, the Plaintiff demands judgment against Defendants for the following:

(a).     A declaration that the provisions in the WDO that regulate isolated wetlands within incorporated villages (Art IV § E pg 48-56) is an improper extension of the power granted to Lake County under 55 ILCS 5/5-1062, and invalid, unconstitutional and unenforceable as applied to the development of the Autumn Ridge subdivision;

(b).     A declaration that the WDO provisions that allow SMC inspections of erosion and sediment control (Art. IV § B.j pg. 25) is an improper extension of the power granted to Lake County under 55 ILCS 5/5-1062, and invalid, unconstitutional and unenforceable as applied to the development of the Autumn Ridge subdivision;

(c).     A declaration that the WDO provisions that retain jurisdiction over floodplains in incorporated villages (Art. IV § C-D pg 35-48) are invalid, unconstitutional and unenforceable as applied to the development of the Autumn Ridge subdivision;

(d).     A declaration that the WDO provisions that seek to license enforcement officers, wetland specialist, and erosion control inspectors within incorporated villages (Apx. A pg. 66-69) are invalid, unconstitutional and unenforceable as applied to the development of the Autumn Ridge subdivision;

(e).     A declaration that Lake County is without authority to deny conditional or major access to Rollins Road for the development of the Autumn Ridge subdivision; and

(f).     Costs of this suit including reasonable attorneys fees, and such other and further relief this Court may deem just and proper.

### COUNT 2 (INJUNCTIVE RELIEF)

COMES NOW the Plaintiff and files its complaint for Injunctive Relief against the Defendants and states as follows:

61.     The previous paragraphs of this Amended Complaint are incorporated into this cause of action by this reference as though fully set forth herein.

62.     The Plaintiff has no adequate remedy at law for the injuries which the Plaintiff has suffered and will continue to suffer in the future unless Lake County and SMC's

wrongful conduct is restrained and enjoined. It will be impossible for the Plaintiff to determine the precise amount of damages, and even if those damages are ascertained it may be too late to save the Plaintiff from imminent demise in bankruptcy.

63.    Unless Lake County and SMC's wrongful conduct is restrained and enjoined, the Plaintiff will suffer great and irreparable harm, and will be forced to file bankruptcy.

WHEREFORE, the Plaintiff demands judgment against Defendants for the following:

(a).    Issuance of a preliminary injunction, and followed by a permanent injunction, enjoining Lake County and SMC, and anyone acting on its behalf, from regulating the wetlands and inspecting the development for the 25-lot Autumn Ridge subdivision;

(b).    Issuance of a preliminary injunction, and followed by a permanent injunction, enjoining Lake County, and anyone acting on its behalf, from denying access to the Property to Rollins Road;

(c).    Costs of suit including reasonable attorneys fees and such other and further relief this Court may deem just and proper.

## COUNT 3 (VIOLATION OF THE FIRST AMENDMENT)

COMES NOW the Plaintiff and for their complaint for violation of the First Amendment to the United States Constitution against the Defendants states as follows:

64.    The previous paragraphs of this Amended Complaint are incorporated into this cause of action by this reference as though fully set forth herein.

65.    The conduct of the officials for the Defendants, Glenn Westman, the Principal Wetland Specialist for SMC, and Betsy Duckert, with the Lake County Department of Highway and Traffic, was performed under color or laws, ordinances, regulations, and

statutes and all such conduct constitutes "acts of the state" within the meaning of the Fourteenth Amendment and the Federal Civil Rights Act, 42 U.S.C. §1983.

66.     The Plaintiff has exhausted all administrative remedies available to compel the Defendants to allow the Plaintiff to develop the Autumn Ridge subdivision as approved by the Village of Grayslake.

67.     After the Defendants halted the development, the Plaintiff filed the lawsuit in this case. After the lawsuit was filed, the Lake County DOT refused to approve the Plaintiff's request for conditional access to Rollins Road, in part, as a retaliatory strike against the Plaintiff for suing the Defendants over the regulation of isolated wetlands. The Defendants retaliated against the Plaintiff in violation of the Plaintiff's rights under the First Amendment to the U.S. Constitution prohibiting retaliation for seeking redress of grievances.

68.     The Defendants seek to **chill the assertion of constitutional and statutory rights**, by forcing developers to give up their rights to develop isolated wetlands or face retaliatory denials of their project in violation of the First Amendment to the U.S. Constitution. By retaliating, the Defendants seek to chill the assertion of constitutional and statutory rights. The Defendants' retaliatory acts would chill a person of ordinary firmness from filing the lawsuit in this case and from complaining about the violations to their constitutionally protected activity in violation of the **constitutional rights of others** provided by the First Amendment, which is actionable under 42 U.S.C. § 1983.

69.     The Plaintiff has a lawful right to demand compliance with constitutional and statutory authority, and that right is protected by the First Amendment to the United States Constitution and actionable under 42 U.S.C. § 1983.

WHEREFORE, the Plaintiff prays for judgment against the Defendants, as follows:

(a).    For damages against the Defendants in an amount to be determined upon trial of this action, which amount exceeds $1 Million Dollars; and

(b).    For costs of suit including reasonable attorneys fees in accordance with 42 U.S.C. § 1988, and for such other and further relief this court may deem just and proper.

## COUNT 4 (VIOLATION OF EQUAL PROTECTION)

COMES NOW the Plaintiff and for their complaint for violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution against the Defendants, state as follows:

70.    The previous paragraphs of this Amended Complaint are incorporated into this cause of action by this reference as though fully set forth herein.

71.    During the same time that the Defendants refused to approve the Plaintiff's access to Rollins Road, the Defendants approved other projects that agreed to allow SMC to regulate isolated wetlands. The other similarly-situated developers were granted approval during the same time that the Plaintiff was denied access. The reasons for denial of the Plaintiff's access to Rollins road is an illegitimate desire to punish the Plaintiff for refusing to go along with the many statutory violations, and for filing the lawsuit in this case.

72.    The actions of the Defendants alleged above violate the Plaintiff's rights to equal protection as provided by the Fourteenth Amendment to the United States Constitution, and any violation of the same is compensable under 42 U.S.C. § 1983 permitting damages for violation of the right of equal protection.

WHEREFORE, the Plaintiff prays for judgment against the Defendants, as follows:

(a).    For damages against the Defendants in an amount to be determined upon trial of this action, which amount which exceeds $1 Million Dollars; and

(b).    For costs of suit including reasonable attorneys fees in accordance with 42 U.S.C. § 1988; and for such other and further relief this court may deem just and proper.

### COUNT 5 (ILLINOIS REGULATORY TAKING)

COMES NOW the Plaintiff and for its complaint for violation of Article I, § 15 of the Illinois Constitution, prohibiting the taking of property without just compensation, against the Defendants state as follows:

73.    The previous paragraphs of this Amended Complaint are incorporated into this cause of action by this reference as though fully set forth herein.

74.    Article I, § 15 of the Illinois Constitution provides that "private property shall not be taken or damaged for public use without just compensation."

75.    Article I, § 15 of the Illinois Constitution is designed to bar Lake County from forcing some people alone to bear public burdens which, in all fairness and justice, the public should bear, and to ensure that the Plaintiff should not have to bear alone the economic burdens that rightly belong on the society that benefits from their imposition.

76.    Forcing the Plaintiff to retain more than 54% of the land in permanent open space will substantially interfere with the Plaintiff's enjoyment of the land, and deprive the Plaintiff of economically viable use of the land in violation of Article I, § 15 of the Illinois Constitution. As a result of the Defendant's regulatory taking of the Property, a right has accrued to the Plaintiff for just compensation from the Defendants; however, the Defendants have not instituted condemnation proceedings to acquire the Property, nor have they paid, or offered to pay, the Plaintiff any just compensation.

WHEREFORE, the Plaintiff prays for judgment against the Defendants, as follows:

(a).    For damages against the Defendants in an amount to be determined upon trial of this action, which amount which exceeds $1 Million Dollars; and

(b).    For costs of suit including reasonable attorneys fees, and for such other relief this court may deem just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Sebastian Rucci (ND IL No. 90785689)
40 The Ledges, 3C
Youngstown, Ohio 44514
Phone: (330) 707-1182
Fax:    (330) 707-1882
Email: SebRucci@Gmail.com
Attorney for the Plaintiff


## VERIFICATION

I am the president of Campus Investments, Inc., the Plaintiff in this action. I have read the above Verified Amended Complaint and know its contents, and the matters stated in Verified Complaint are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I Greg Waller, under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct.

Dated June 17, 2008                    Campus Investments, Inc.

_____
Greg Waller, president

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2008, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties via the Court's electronic filing system and

parties may access this filing through the Court's Case management/Electronic Case Files

(CM/ECF) found on the internet at https://ecf.ilnd.uscourts.gov.

Sebastian Rucci (ND IL No. 90785689)

EXHIBIT A



**DEPARTMENT OF THE ARMY**
CHICAGO DISTRICT, CORPS OF ENGINEERS
111 NORTH CANAL STREET
CHICAGO, ILLINOIS 60606-7206

MAY 1 7 2002

REPLY TO
ATTENTION OF:

Construction-Operations Division
Regulatory Branch
200200622

SUBJECT: Jurisdictional Determination for a parcel located off
of Rollins Road in Round Lake Beach, Lake County, Illinois


Mr. John E. Lingle
Christopher B. Burke
9575 West Higgins Road
Suit 600
Rosemont
Barrington, Illinois  60010-4920

Dear Mr. Lingle:

    This is in response to your April 25, 2002, request for a
jurisdictional determination, for the above-referenced project.
This office has determined that there are no waterways, wetlands
or other areas considered "waters of the United States" under
Corps of Engineers jurisdiction at the site.  Therefore, a
Department of the Army permit under Section 404 of the Clean
Water Act is not required.  It is your responsibility however to
obtain any required state or local approvals for this project.

    This determination covers only your project as described
above and as shown in the Wetland Delineation report dated April
22, 2002, prepared by your office.  Enclosed, please find a copy
of the decision document for our determination.  Caution should
be taken so that construction materials and/or activities do not
enter any waterway or wetlands beyond the scope of this
determination.  If the design, location or purpose of the project
is changed, you should contact this office to determine the need __
for other authorization.

    This determination has been conducted to identify the limits
of the Corps Clean Water Act jurisdiction for the particular site
identified in this request.  This determination may not be valid
for the wetland conservation provisions of the Food Security Act
of 1985, as amended.  If you or your tenant are USDA program
participants, or anticipate participation in USDA programs, you
should request a certified wetland determination from the local
office of the Natural Resources Conservation Service prior to
starting work.

This letter is considered an approved jurisdictional determination for your subject site.  If you wish to appeal this decision or if you have any questions please contact Ms. Jaimee Hammit of my staff by telephone at (312) 353-6400, extension 4033.  You may also visit our website at www.lrc.usace.army.mil/co-r for information on our program.

Sincerely,

for Keith L. Wozniak
Chief, West Section
Regulatory Branch

Enclosure

Copy Furnished: (W/out Enclosure)

Lake County Storm Water Management (Hmieleski)
Lake County Planning & Development (Crivello)

U.S. Army Corps of Engineers, Chicago District

**APPLICANT:** Mr. John E. Lingle

**PROJECT LOCATION/WATERWAY:** Rollins Road, Lake County

**FILE NUMBER:** 200200622

**PROJECT REVIEW COMPLETED:** ☒ Office ☒ Field

**Jurisdictional Determination (JD):**

☐ *Preliminary JD* - A preliminary JD is not appealable (33 CRF 331.5(b)(9))
Based on available information:
  ☐ *There appear to be no* waters of the United States on the project site.
  ☐ *There appear to be* waters of the United States on the project site.

☒ Approved JD - An approved JD is an appealable action.
Based on available information:
  ☒ *There are no* waters of the United States on the project site.
  ☐ *There are* waters of the United States on the project site.
  ☐ *There are* both waters of the United States and non-jurisdictional waters on the project site.

**Basis of Jurisdictional Determination:**

☐ There are no jurisdictional waters of the United States present on the project site.
☐ The presence of waters which are currently used, or were used in the past, or may be susceptible for use to transport interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide (i.e., navigable waters of the U.S.) (33 CFR 328.3(a)(1))
☐ The presence of interstate waters (including interstate wetlands[1]). (33 CFR 328.3 (a)(2))
☐ The presence of a tributary to an interstate water or other water of the US. (33 CFR 328.3 (a)(5))
☐ The presence of wetlands adjacent[2] ( bordering, contiguous, or neighboring) to interstate or other waters of the US, except for those wetlands adjacent to other wetlands. (33 CFR 328.3 (a)(7))
☐ The presence of an isolated water (e.g., intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds).
  ☐ The site is used by interstate or foreign travelers for recreational purposes.(33 CFR 328.3 (a)(3)(i))
  ☐ The site has fish or shellfish that are taken and sold in interstate or foreign commerce. (33 CFR 328.3 (a)(3)(ii))
  ☐ The site is used for industrial purposes by industries in interstate commerce. (33 CFR 328.2 (a)(3)(iii)
  ☐ Other:
☐ Section 10 waterway.

**Information Reviewed**

☒ U. S. Fish and Wildlife Service National Wetland Inventory: GRAYSLAKE.
☒ U. S. Geological Survey Hydrologic Atlas: GRAYSLAKE, HA 230.
☒ USDA National Resources Conservation Service Soil Survey for Lake County.
☒ U. S. Geological Survey 7.5 Minute Topographic Maps: GRAYSLAKE, 1993.
☐ U. S. Geological Survey 7.5 Minute Historic Quadrangles: _____.
☒ U. S. Geological Survey 15 Minute Historic Quadrangles: GRAYSLAKE; 1920.
☒ Aerials (Name & Date):DigiAir 2001
☐ Advanced Identification Wetland Maps: _____.
☒ Site Visit Conducted on: May 8, 2002
☐ Other information:

**Rationale for Basis (applies to any boxes checked above):** No surface water tributary connections could be located on the parcel.

**Lateral Extent of Jurisdiction (33 CFR 328 and 329):**
  ☐ Ordinary High Water Mark.
  ☐ Wetland, as shown on the attached wetland delineation map and/or in a jurisdictional report prepared by:
  ☐ Site Inspection Report (attached)
  ☐ Confirmation of Wetland Boundaries (Delineation) (Please check if the answer is yes)
  ☐ Requested Wetland Delineation
☐ Additional supporting information. (Attach when appropriate):

Recommended by: _____     Date: 5-17-02

Approved by: _____     Date: 5/17/02

[1]Wetlands are identified and delineated using the methods and criteria established in the Corps Wetland Delineation Manual (87 Manual) (i.e., occurrence of hydrophytic vegetation, hydric soils and wetland hydrology). Processes for determining wetlands on agricultural lands may vary from methods described in the Corps Wetland Delineation Manual (1987).

[2] Wetlands separated from other waters of the U.S. by man-made dikes or barriers, natural river berms, beach dunes, and the like are also adjacent.

**EXHIBIT B**

*ROLLINS ROAD*

496.78'   35'   345.11'

*AUTUMN RIDGE SUBDIVISION*

1400.03'

1432.35'

875.30'

*AUTUMN RIDGE LANE*

*AUTUMN RIDGE LANE*

*AUTUMN RIDGE COURT*

1
18,869 sf

2
16,224 sf

3
15,297 sf

4
14,526 sf

5
12,744 sf

6
13,295 sf

7
16,880 sf

8
17,068 sf

9
25,538 sf

10
21,851 sf

11
19,407 sf

12
20,569 sf

13
15,039 sf

14
13,939 sf

15
13,117 sf

16
14,606 sf

17
15,092 sf

18
23,797 sf

19
27,676 sf

20
18,790 sf

21
17,952 sf

22
17,025 sf

23
14,949 sf

24
17,492 sf

25
15,407 sf

COMMON GROUND
667,949 sf

EXHIBIT C



**STORMWATER MANAGEMENT COMMISSION**

March 17, 2006

Campus Investments, Inc.
8650 Lavelle Road
Athens, OH 45701

Subject:   Watershed Development Ordinance Requirements, Proposed Single Family
           Residences, Located at 21157 W. Rollins Road, across from Sheldon Road,
           in the Village of Grayslake, Lake County, Illinois.
           NRI Report No.: 06-2510

Dear Sir:

The Lake County Stormwater Management Commission (SMC) was notified of your
activity by copy of a Natural Resources Information Report (NRI No. 06-2510), dated
March 16, 2006, from the Lake County Soil and Water Conservation District. This letter
is to notify you that development at the above referenced site will require a Watershed
Development Permit (WDP), either from SMC or the appropriate Certified Community.

If you have already applied for or are in the permit process, please disregard this notice.

You can go to our web site at www.co.lake.il.us/smc to download a copy of the WDO
and current application form. We would like to be of assistance; the SMC offers a pre-
application meeting at no charge. If you have any questions or would like to set up a
meeting, please contact our offices at (847) 918-5262.

Sincerely,
LAKE COUNTY STORMWATER MANAGEMENT COMMISSION

Michael D. Warner, PE, CFM
Chief Engineer

MDW:dlh

c:      Kirk Smith, Village of Grayslake
        Kurt M. Baumann, Baxter & Woodman, Inc.
        Lake County Soil & Water Conservation District, Grayslake, Illinois



**STORMWATER MANAGEMENT COMMISSION**

April 2, 2007

Mr. Sebastian Rucci
3058 Chardonnay Lane
Poland, OH  44514

**Subject:** **Watershed Development File #07-11-040**
**Proposed Autumn Ridge Subdivision on Rollins Road**
**(PIN # 06-15-200-018)**
**Grayslake, Lake County, Illinois**
**ISOLATED WETLANDS REVIEW #1**

Dear Mr. Rucci:

Thank you for your submittal for the subject development, received by the Lake County Stormwater Management Commission (SMC) on March 8, 2007. The submittal included the General Development Plan prepared by your firm dated 2-07-07 and the wetland delineation report prepared by Christopher B. Burke Engineering, Ltd. (CBBEL) dated 10-18-05. Please reference the above Watershed Development File # in future correspondence with SMC related to this development.

A Watershed Development Permit (WDP) from the Village of Grayslake is required for the proposed development, in accordance with the Lake County Watershed Development Ordinance (WDO, 1-10-06). Grayslake is a certified community for approval and enforcement of the standard (stormwater management) provisions of the WDO, but not the isolated wetland provisions of the WDO. Please contact Mr. Kurt Baumann of Baxter & Woodman, the Village's WDO Enforcement Officer, at (847)223-5088 for the WDP standard provisions submittal requirements. SMC's review of the proposed development for potential isolated wetland impacts is required prior to the Village's issuance of the WDP.

We have the following comments on your submittal, with respect to isolated wetlands:

1) The one wetland identified on the development site is an *Isolated Water of Lake County* (IWLC), per the jurisdictional determination letter from the U.S. Army Corps of Engineers dated 5-17-02 (Corps ref. #200200622). The IWLC is subject to regulation by SMC under the WDO. Please confirm that the wetland limits shown on the General Development Plan are the surveyed boundaries from CBBEL's wetland delineation.

2) According to the General Development Plan, it does not appear the IWLC will be directly impacted by the development (i.e., filled). However, a wetland hydrology analysis is required to determine if indirect impacts to the IWLC may occur (see #3 below). If no direct or indirect impacts to the IWLC will occur, a Letter of No Wetland Impact Determination ("LONI") can be issued by SMC. The LONI review fee is $920. Please

*Sebastian Rucci*
*WDP # 07-11-040*
*April 2, 2007*
*Page 2 of 2*

provide the LONI review fee prior to or with your next submittal.  If it is determined that IWLC impacts will occur form the development, a full wetland submittal will be required in accordance with WDO IV.E.2.c. and additional review fees will apply.

3)  Please provide a "80-150%" wetland hydrology analysis for the preserved IWLC meeting the requirements of WDO IV.E.7.a.  If the wetland hydrology requirement is not met, a wetland impact will be assumed and mitigation will be required per WDO Article IV.E.7.b.

4)  The IWLC is greater than 2.5 acres in size; therefore, a minimum 50-foot buffer width is required for this wetland (WDO, IV.B.1.i.(1)(b)(iii)).  Final approval of the wetland buffer will be by the Village.  Note that the preserved wetland and buffer on the development site shall be protected by a deed or plat restriction (WDO, IV.B.1.i.(12)).  Please provide SMC and the Village with a draft copy of a proposed plat restriction and any associated exhibit(s) for review.  For your consideration, we are enclosing SMC's example Wetland and Wetland Buffer Restrictive Covenant by Plat.  Final approval of the plat restriction will be by the Village.

5)  According to the General Development Plan, the wetland buffer area will be graded.  Note that the disturbed buffer area shall be planted with appropriate native vegetation per WDO IV.B.1.i.(9).  Please provide SMC and the Village with the proposed native seeding list for the disturbed buffer area.

We would like to be of assistance.  If you have any questions, or would like to set up a meeting, please call me at (847) 918-3611 or e-mail me at gwestman@co.lake.il.us.

Sincerely,
LAKE COUNTY STORMWATER MANAGEMENT COMMISSION

Glenn H. Westman, PWS, CWS, CFM
Principal Wetland Specialist

Enclosure:  Example Wetland and Wetland Buffer Restrictive Covenant

cc:    Kurt Baumann, Baxter & Woodman, Inc. (EO - Village of Grayslake)
       Greg Waller, Campus Investments, Inc.

U:\Regulatory Program\Permits\07 Permits\07-11-040\Wetland Review 1_040207

EXHIBIT E



**STORMWATER MANAGEMENT COMMISSION**

August 17, 2007

Mr. Sebastian Rucci
3058 Chardonnay Lane
Poland, OH  44514

Subject:     **Watershed Development File #07-11-040**
             **Proposed Autumn Ridge Subdivision on Rollins Road**
             **(PIN # 06-15-200-018)**
             **Grayslake, Lake County, Illinois**
             **ISOLATED WETLANDS REVIEW #2**

Dear Mr. Rucci:

On August 2, 2007, the Lake County Stormwater Management Commission (SMC) received a wetland submittal for the subject development on your behalf from Bollinger, Lach & Associates, Inc. (BLA).  The submittal included a request for a "Letter of No Wetland Impact Determination" (LONI) from SMC for the development. Please reference the above Watershed Development File # in future correspondence with SMC related to this development.

A Watershed Development Permit (WDP) from the Village of Grayslake is required for the proposed development, in accordance with the Lake County Watershed Development Ordinance (WDO, 1-10-06).  Grayslake is a certified community for approval and enforcement of the standard (stormwater management) provisions of the WDO, but not the isolated wetland provisions of the WDO.  Please contact Mr. Kurt Baumann of Baxter & Woodman, the Village's WDO Enforcement Officer, at (847)223-5088 for the WDP standard provisions submittal requirements. A LONI or Isolated Wetland Impacts Approval from SMC's is required prior to the Village's issuance of the WDP.

We have the completed our review of BLA's submittal.  Please amend (or direct your consultants to amend) the submittal to address the following:

1) Please provide a grading plan and revised erosion control plan showing the surveyed wetland boundary.

2) Please provide a revised wetland hydrology analysis for the preserved isolated wetland based on runoff volume, as outlined in WDO Article IV.E.7.a. The analysis submitted by BLA was based on flow rate. If the wetland hydrology requirement is not met, a wetland impact will be assumed and mitigation will be required per WDO Article IV.E.7.b.

*Sebastian Rucci*
*WDP # 07-11-040*
*August 17, 2007*
*Page 2 of 2*

3) The proposed location of silt fence is unclear on the Erosion & Sediment Control Plan (Sheet 10). Please enhance the plan to clearly show the silt fence around the perimeter of all areas that will be disturbed, with a minimum of 1' outside the surveyed wetland boundary. SMC recommends that a double-row of silt fence be installed along the edge of the wetland boundary to provide maximum protection of the wetland from disturbance and sedimentation. Note that silt fence materials and installation must meet the applicable sections of AASHTO Standard Specification 288-00, per WDO Article IV.B.1.j(1)(f.). Since the development exceeds 10 acres in size, a Designated Erosion Control Inspector (DECI) is required per WDO Article IV.B.1.j.(2). The Village has final approval authority for the erosion and sediment control measures.

4) According to the Landscaping Plan (Sheet 11), the disturbed wetland buffer is to be seeded with the IDOT Class 4A low-profile native grass mixture. To increase the density and diversity of the native buffer vegetation, SMC recommends the proposed seed mix be enhanced by adding the IDOT Class 5 native forb with annuals mixture to the Class 4A mixture. The Village has final approval authority for the landscape plan.

5) Prior to issuance of the LONI or isolated wetland impacts approval for the development, SMC requires a *deposit* be provided in the amount of $1,600 to ensure we are notified of the pre-construction meeting and to cover the cost of potential wetland compliance inspections. We request the pre-construction meeting be held onsite with you or your consultant, the general contractor, and the DECI in order to inspect the installed wetland protective measures (e.g., silt fence). If SMC is notified at least five (5) working-days in advance of the field pre-construction meeting, $500 of the deposit will be returned upon your written request. The remaining $1,100 of the deposit, minus any assessed wetland inspection fees, will be returned upon your written request following permanent site stabilization and a final site inspection by SMC.

We would like to be of assistance. If you have any questions, or would like to set up a meeting, please call me at (847) 918-3611 or e-mail me at gwestman@co.lake.il.us.

Sincerely,
LAKE COUNTY STORMWATER MANAGEMENT COMMISSION

*Glenn H. Westman*

Glenn H. Westman, PWS, CWS, CFM
Principal Wetland Specialist

cc:   Kirk Smith, Village of Grayslake
      Kurt Baumann, Baxter & Woodman, Inc. (EO - Village of Grayslake)
      Cynthia Flower, Bollinger, Lach & Associates, Inc.

U:\Regulatory Program\Permits\07 Permits\07-11-040\Wetland Review 2_081707

LAKE COUNTY

**STORMWATER MANAGEMENT COMMISSION**

February 13, 2008

Mr. Sebastian Rucci, P.E.
3058 Chardonnay Lane
Poland, OH  44514

Subject:      **Watershed Development File #07-11-040**
              **Proposed Autumn Ridge Subdivision on Rollins Road**
              **(PIN # 06-15-200-018)**
              **Grayslake, Lake County, Illinois**
              **ISOLATED WETLANDS REVIEW #3**

Dear Mr. Rucci:

Thank you for your submittal for the subject development, received by the Lake County Stormwater Management Commission (SMC) on January 9, 2008.  The submittal included updated plans prepared by your office and a revised wetland hydrology analysis prepared by Bollinger, Lach & Associates, Inc. (BLA). Please reference the above Watershed Development File # in future correspondence with SMC related to this development.

A Watershed Development Permit (WDP) from the Village of Grayslake is required for the proposed development, in accordance with the Lake County Watershed Development Ordinance (WDO, 1-10-06).  Grayslake is a certified community for approval and enforcement of the standard (stormwater management) provisions of the WDO, but not the isolated wetland provisions of the WDO.  Please contact Mr. Kurt Baumann of Baxter & Woodman, the Village's WDO Enforcement Officer, at (847)223-5088 for the WDP standard provisions submittal requirements.  **SMC's approval of isolated wetland impacts (or a no wetland impact determination) is required prior to the Village's issuance of the WDP. Note that SMC's approval of the Base Flood Elevation (BFE) for the non-riverine flood-prone depressional area on the property will also be required prior to issuance of the WDP if the tributary drainage area to the depression is greater than 20 acres.**

We have the completed our review of your submittal. Please address (or direct your consultants to address) the following comments:

1) The "Wetland Limits" line shown on the grading plan (Sheet 5) does not appear to correlate with the wetland boundary delineated by Christopher B. Burke Engineering, Ltd. (CBBEL), as depicted on Exhibit 9 in CBBEL's wetland report for the property dated October 18, 2005 (Revised).  SMC cannot proceed further with the isolated wetlands review for the proposed development until we verify the delineated wetland boundary in the field.  Please have the surveyed wetland boundary re-staked and notify SMC when this has been completed – we will then schedule a review to verify the boundary as soon as field conditions allow (currently there is a 12+ inch snow cover). The field-verified wetland boundary shall be shown on the development plans for permitting purposes.

2) SMC does not concur with BLA's wetland hydrology analysis (rev. 9-06-07). Please revise the analysis to address the items below. If the "80-150" wetland hydrology requirement is not met, a wetland impact will be assumed and mitigation will be required per WDO Article IV.E.7.b.

   a) The existing condition land use (outside the wetland) appears to be agricultural row crops, not grassland/pasture as indicated in BLA's analysis. Please clarify and adjust the runoff curve numbers appropriately.

   b) Our review identified several discrepancies between the detention volume calculations and the plan sheet. For example:

      i) The calculations indicate a 2-year high water level (HWL) of 779.50 and the plan sheet indicates a 2-year of 779.95.
      ii) The provided 2-year volume is 1.44 ac-ft per the plan sheet; 0.88 ac-ft per calculation summary; and approximately 0.45 ac-ft per the volume calculations table.

   c) The report did not include calculations for the total 2-year detention discharge volume. The required peak detention volume may be 0.88 ac-ft; however, runoff is discharging continuously before and after the peak volume. Please provide the total discharge volume from the beginning of the storm event to the end.

   d) If the verified wetland boundary is different from the boundary currently shown on the plans (see #1 above), the tributary drainage areas and hydrology calculations will need to be revised accordingly to reflect the verified wetland boundary.

3) Please enhanced the Erosion & Sediment Control Plan (Sheet 10) as follows:

   a) the note regarding seeding of the wetland buffer should match the revised Landscape Plan (Sheet 11) - buffer shall be seeded with a mixture of IDOT Class 4A low-profile native grasses and IDOT Class 5 native forbs; and,
   b) the field-verified wetland boundary (see #1 above) should also be included on this plan.

4) Prior to issuance of the LONI or isolated wetland impacts approval for the development, SMC requires a *deposit* be provided in the amount of $1,600 to ensure we are notified of the pre-construction meeting and to cover the cost of potential wetland compliance inspections. We request the pre-construction meeting be held onsite with your field construction manager, the general contractor, and your designated erosion control inspector (DECI) in order to inspect the installed wetland protective measures (e.g., silt fence). If SMC is notified at least five (5) working-days in advance of the field pre-construction meeting, $500 of the deposit will be returned upon your written request. The remaining $1,100 of the deposit, minus any assessed wetland inspection fees, will be returned upon your written request following permanent site stabilization and a final site inspection by SMC.

If you have any questions, or would like to set up a meeting, please call me at (847)918-3611 or e-mail me at gwestman@co.lake.il.us.

Sincerely,

LAKE COUNTY STORMWATER MANAGEMENT COMMISSION

Glenn H. Westman, PWS, CWS, CFM
Principal Wetland Specialist

cc:    Kurt Baumann, Baxter & Woodman, Inc. (EO - Village of Grayslake)
       Kirk Smith, Village of Grayslake
       Greg Waller, Campus Investments, Inc. (via fax)
       Cynthia Flower, Bollinger, Lach & Associates, Inc.
       Kurt Woolford, SMC

U:\Regulatory Program\Permits\07 Permits\07-11-040\Wetland Review3_012308

**EXHIBIT G**

Division of Transport

**LakeCounty**

Section 99-00080-47-LA
Rollins Road Improvement

April 29, 2003

Martin G. Buchler, P.E.
Director of Transportation/County Engineer

600 West Winchester Road
Libertyville, Illinois 60048-1381
Phone 847-362-3950
Fax 847-362-5200

Mr. William Tauber
27877 Bradley Road
Lake Forest, Illinois 60045

Dear Mr. Tauber:

This letter is being written to confirm our agreement for the acquisition of right of way from your property. Listed below are the commitments the Lake County Division of Transportation agrees to in this regard.

1. Payment for 0.602 acres of new right of way and temporary easement containing 0.041 acres needed for the project shall be $28,000.00.
2. Lake County DOT will grant one major access to the property at a location to be determined in accordance with the Access Ordinance.
3. When the property is developed (50 single family lots or less or traffic generation equivalent to a 50 single family development) the developer will need to provide an engineering plan for the re-striping of the center median for the left turn lane and for the new curb cut opening and approach work within the right of way.
4. At the time of development, the developer will dedicate sufficient right of way to provide a 60-foot ½ right of way along the entire frontage. It is understood this will only affect the East portion of the property where less than 60-feet of right of way will be acquired under this agreement. Engineering plans and the right of way dedication shall be provided in accordance with the Access Ordinance. The permit shall be issued upon completion of the access permit process.
5. The curb will be depressed for the existing circle drives during our construction project and at the time of development, the developer will remove the circle drive and construct one major access in accordance with the Access Ordinance.
6. Sanitary sewer, water lines and any future work to be performed in the right of way shall be permitted within the right of way in accordance with the Utility and Facility Ordinance.

By this letter the Division of Transportation hereby agrees to these terms and conditions and they will go into effect upon acceptance by the Division of the executed Trustee's Deed and Temporary Easement required to construct the project. Thank you.

Very Truly Yours,

Chuck Good
Right of Way Agent

Cc: Dusty Powell