## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CAMPUS INVESTMENTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08-cv-3046 |
| v. | ) | |
| | ) | Judge George W. Lindberg |
| LAKE COUNTY STORMWATER | ) | |
| MANAGEMENT COMMISSION, and | ) | Magistrate Judge Arlander Keys |
| LAKE COUNTY, ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION

Plaintiff seeks a temporary restraining order, pursuant to Fed. R. Civ. P. 65 enjoining and restraining the Defendants from enforcing county wetland regulations within the Plaintiff's subdivision located in the Village of Grayslake.

### I.    BACKGROUND FACTS.

The facts are set forth in the Verified Amended Complaint and summarized as follows. The Plaintiff, Campus Investments, Inc., is the owner of 28.48 acres on Rollins Road (the "Property") in the Village of Grayslake (the "Village"). About one half of the Property is an **isolated wetland** outside the Army Corps of Engineers jurisdiction.

The Village approved a Special Use Permit for the development of a 25-lot **subdivision named Autumn Ridge** on the Property. The subdivision left 54% of the Property in open space. After the Village approved the SUP, Lake County Stormwater Management Commission ("SMC") notified the Plaintiff that "SMC's approval of isolated

wetland impacts (or a no wetland impact determination) is required prior to the Village's issuance" of a permit. SMC seeks to redesign the approved Autumn Ridge subdivision, by **requiring more than 54% open space**.

The Village approved the importation of fill onto the Property and the Plaintiff installed a silt fence in anticipation of importing fill. On May 27, 2008, SMC's Principal Wetland Specialist, inspected the Property and told the Plaintiff to "**stop all work**." After the lawsuit was filed in this case, the Plaintiff asked for the permit to access Rollins Road which Lake County approved ten months earlier. Lake County's engineer informed the Plaintiff that they were aware of the legal proceedings, and they **would not issue the access permit** until plans were approved by the Village, *i.e.*, isolated wetlands are first be approved by SMC.

The Plaintiff then requested a conditional access permit. The request complied with all county requirements; in fact, conditional access is issued as a matter of right to allow landowners to do construction work on their property. On June 13, 2008 the Plaintiff was informed that Lake County **denied the conditional access** and was warned not to import fill.

II.    **STANDARD FOR ISSUANCE OF INJUNCTIVE RELIEF**.

In the Seventh Circuit in "order to obtain a preliminary injunction, the moving party must show that: (1) they are reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest. If the movant can meet this threshold burden, then the inquiry becomes a 'sliding scale' analysis where these factors are weighed against one another." *Joelner v. Village of Wash. Park*, 378 F.3d 613, 619 (7th Cir. 2004).

III.    **THERE IS AN OVERWHELMING LIKELIHOOD THAT PLAINTIFF WILL PREVAIL ON THE MERITS OF THIS LAWSUIT AT TRIAL.**

Following back-to-back floods in northeastern Illinois, the Illinois General Assembly enacted 55 ILCS 5/5-1062 granting stormwater management powers to northeastern Illinois counties. The legislative purpose is identified in § 5-1062(a) as follows: "The **purpose** of this Section is to allow management and mitigation of the effects of urbanization on **stormwater drainage** in metropolitan counties" the "**purpose** of this Section shall be achieved by: (1) consolidating the existing **stormwater management** framework into a united, countywide structure; (2) setting minimum standards for **floodplain and stormwater management**; and (3) preparing a countywide plan for the **management of stormwater runoff**, including the management of natural and man-made drainageways."

The legislation provides that a "stormwater management planning committee shall be established" by the county. 55 ILCS 5-1062(b). "The principal duties of the committee shall be to develop a **stormwater management plan**." § 5-1062(b). The "county board may prescribe by ordinance reasonable rules and regulations for **floodplain** management and for governing the location, width, course and release rate of all **stormwater** runoff channels, streams and basins in the county." § 5-1062(f). However, the "county **shall not enforce** rules and regulations adopted by the county **in any municipality**" that "has a municipal stormwater management ordinance" consistent with the county's ordinance. § 5-1062(k).

After SMC was established they ultimately developed, and Lake County adopted, the Lake County Comprehensive Stormwater Management Plan, last amended in 2002. See *www.co.lake.il.us/elibrary/publications/smc/StormWater2002CompPlan.pdf*. Lake County enacted a Watershed Development Ordinance ("WDO"), and **amended it seven times**; the last one in 2006. See www.co.lake.il.us/elibrary/publications/smc/wdo2006_appcmod.pdf.

A.   **LAKE COUNTY ENLARGED THE LIMITED AUTHORITY BY REGULATING ISOLATED WETLANDS IN INCORPORATED VILLAGES**.

On January 9, 2001 the Supreme Court issued its opinion in *Solid Waste Agency of Northern Cook County v. Army Corps of Eng.*, 531 U.S. 159 (2001) which held that isolated wetlands are not within the Army Corp's jurisdiction.[1] Seven months after the decision, SMC amended the WDO and redefined wetlands to include the protection of isolated wetlands.

The WDO defines "Isolated Waters of Lake County" as all "**wetlands** that are **not under U. S. Army Corps** of Engineers jurisdiction." (Apx. A pg 71). The WDO requires a permit for impacts to isolated wetlands, and limits impacts to 1/10 acre, impacts greater than 1/10 require mitigation. (Art. IV § E.4). The WDO requires specialists certified by SMC to delineate wetlands (Art. IV § E.2-3) and also provides that "SMC will perform Certified Wetland Specialist duties for communities." (Art. III § B.12).[2]

---

[1] SMC's Tech Dev. Manual § 5.1 notes that "until January 9, 2001, wetlands were regulated by the Corps under authority of the federal CWA. On that date, the Supreme Court ruled on the *Solid Waste Agency of Northern Cook County* ("*SWANCC*") case and that ruling effectively **removed the Corps' authority to regulate intrastate, isolated waters/wetlands** not tributary to a navigable waterway. These isolated waters/wetlands represent thousands of acres within Lake County that became at risk for destruction with the *SWANCC* ruling. On August 14, 2001, the Lake County Board amended the [Watershed Development] Ordinance to **protect isolated waters/wetlands within the county that were no longer regulated the Corps** and defined them as Isolated Waters of Lake County."

[2] "Jurisdictional wetland determinations are required for all proposed developments in Lake County." (Storm. Mgmt. Plan § 3.2.4)."Applications requiring isolated wetland review must also be forwarded to SMC unless the community is specifically certified to perform this review. Currently, only four jurisdictions have applied to be certified for isolated wetland review. Thus, SMC must increase its resources to **provide isolated wetland services for a majority of the county's jurisdictions**." (Storm. Mgmt. Plan § 4.2.4.1).

The determination of whether the WDO is within the scope of authority granted to Lake County by the legislature is guided by the following principles: "Counties . . . shall have only **powers granted to them by law**." Illinois Constitution Art. VII, § 7. "Counties" can "exercise only those powers **expressly granted** to them by the legislature." *Redmond v. Novak*, 427 N.E.2d 53, 57-58 (Ill. 1981). The "powers" of "counties, **are not to be enlarged** by liberally construing the statutory grant, but, quite to the contrary, are to be **strictly construed** against the governmental entity." *Inland Land Appreciation Fund v. County of Kane*, 800 N.E.2d 1232, 1236 (Ill. App. 2003).

The enabling legislation which gave rise to the SMC **uses the word stormwater fifty-one times**; the word wetlands is conspicuously absent from § 5-1062. "The fundamental rule of statutory construction is to give effect to the intent of the legislature. The best evidence of legislative intent is the language used in the statute, which must be **given its plain and ordinary meaning**." *Village Chatham v. County of Sangamon*, 837 N.E.2d 29, 45 (Ill. 2005).

The WDO regulates wetlands inside villages (Art. IV § E). However, the legislation limits the county's authority to enacting "rules and regulations for **floodplain** management and for governing the location, width, course and release rate of all **stormwater** runoff channels, streams and basins in the county." § 5-1062(f). The plain reading of § 5-1062(f) limits the county's power to stormwater and floodplain regulations. Lake County lacks the authority to enlarge the legislation to include wetlands. The "powers" of "counties, are not to be enlarged" but "strictly construed." *Inland Land Appreciation Fund*, 800 N.E.2d at 1236.

The WDO gives SMC exclusive jurisdiction over village floodplains (Art IV § C-D). However, the legislation states that the "county **shall not** enforce rules and regulations

adopted by the county in any municipality . . . that has a municipal stormwater management ordinance that is consistent with" the county ordinance. § 5-1062(k). The municipality regulates flooplains and stormwater after it adopts a consistent stormwater ordinance.[3] Lake County departs from the plain language by adopting "conditions which **conflict with the clearly expressed legislative intent**. When the statutory language is clear, it must be given effect without resort to other tools of interpretation." *Village of Chatham*, 837 at 45.

The WDO also permits SMC to inspect erosion control within villages (Art. IV § B.j). However, the enabling legislation does not grant Lake County the power to inspect erosion control within villages. To the contrary, the county may, after ten days written notice to the owner enter land "within the county **for the purpose of inspecting stormwater facilities** or causing the removal of any obstruction to an affected watercourse." § 5-1062(j). The plain and ordinary reading of § 5-1062(j) limits county inspections to "stormwater facilities."

The WDO provisions that allow the inspection of erosion inside villages are an improper expansion of § 5-1062, and in conflict with § 5-1062(j) which limits county inspections to stormwater facilities, and in conflict with § 5-1062(k) by retaining jurisdiction after a municipality has adopted a consistent stormwater ordinance. The WDO wetland regulations, and erosion inspections provisions, expand the authority granted in § 5-1062(f) and § 5-1062(j) and conflict with § 5-1062(k), and are therefore invalid, unconstitutional and unenforceable as applied to the Autumn Ridge subdivision.

---

[3] The Village of Grayslake has adopted an ordinance identical to the WDO, consequently, Lake County is not permitted to enforce its stormwater rules and regulations in the village. See § 5-1062(k) ("county **shall not** enforce rules and regulations").

B.    **LAKE COUNTY IS WITHOUT EXTRATERRITORIAL AUTHORITY TO REGULATE WETLANDS WITHIN INCORPORATED VILLAGES**.

The WDO provides that a "community's planning commission or corporate authority shall not approve any preliminary" or "final PUD or Plat of subdivision **located inside or outside its corporate limits** unless such PUD or Plat, at a minimum, meets the performance standards of the Lake County Watershed Development Ordinance." (Art. IV § B.1.a.(7)(8)). The WDO regulates planning "inside" a village's corporate limits. However, Lake County only has the power to approve subdivisions "**not being within** any city, **village** or incorporated town." (55 ILCS 5/5-1041).[4] The Village of Grayslake has exclusive authority to establish "standards of design for subdivisions" including requirements for "storm water drainage." (65 ILCS 5/11-12-5). The Village has exclusive zoning power "**within the corporate limits**" including the power to "establish, regulate and limit. . . storm or floodwater runoff channel or basin." (65 ILCS 5/11-13-1).

The WDO conflicts with the subdivision and zoning authority granted to villages by the Municipal Code, and the "courts have **never** permitted a municipality's **extra-territorial** powers to **supersede** the governmental unit's exercise of zoning power **over land within its own territory**." *Aurora Nat'l Bank v. City of Batavia*, 414 N.E.2d 916, 920 (Ill. App. 1980).

---

[4] The County Code subdivision rules apply only to "land, **not being within** any city, **village**" and the county subdivision regulations may include "such reasonable requirements **with respect to floodplain and stormwater management** as may be **established by the County Stormwater Management Committee** established under § 5-1062 of this Code." (55 ILCS 5/5-1041). Also, the County zoning power is limited to zoning "the entire county **outside the limits** of such cities, **villages**" and "any zoning ordinance enacted by a city, village or incorporated town **shall supersede**, with respect to **territory within the corporate limits of the municipality**, any county zoning plan." (55 ILCS 5/5-12001).

Lake County seeks to substitute its opinion of what subdivision regulations are desirable.[5]

However, the legislature has delegated subdivision authority to villages. The WDO interferes

with the village's legislative authority over subdivision and "circumvents the purpose of a

statute by doing indirectly what it cannot do directly." *Village Chatham*, 837 N.E.2d at 36-37.

Lake county has expanded its authority with **each of the seven amendments** to the

WDO. Lake County has used the WDO as blanket authority to enact that which they deem

necessary and proper. The statute does not authorize extraterritorial zoning, subdivision or

licensing, and was designed to regulate floodplain and storwater management. § 5-1062(a).

There is an overwhelming likelihood that the Plaintiff will prevail on the merits at trial.

C.    **LAKE COUNTY'S RETALIATORY ACTION IN DENYING ACCESS TO
      ROLLINS ROAD IS UNCONSTITUTIONAL**.

Access to the courts has long been recognized as a "fundamental constitutional" right.

*Bounds v. Smith*, 430 U.S. 817, 828 (1977); see *California Motor Transport Company v.

Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("right of access to the courts is . . . one aspect

of the right of petition"); *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222

(1967) (right to petition is among the "most precious of liberties safeguarded by the Bill of

Rights"). It has also long been recognized that state officials may not retaliate against

---

[5] In 1990, SMC's mission was "to provide and maintain a system of stormwater
conveyances and controls." (Storm. Mgmt. Plan 2002 § 1.6). In 2002, SMC noted that "many
of the regulatory needs identified in the 1990 Comprehensive Plan have since been
addressed." (Storm. Mgmt. Plan 2002 § 3.2.4). With stormwater address, SMC amended it's
role to include environmental protection. In 2002, "environmental awareness is at a new
high. The public now demands restoration" of "wetlands to convert them back into more
naturalized states" and these "differences have already changed the way SMC serves its
constituents in Lake County and will continue to chart a new path for SMC. Updating the
mission of SMC to be consistent with these changes." (Storm. Mgmt. Plan 2002 § 1.3).

individuals because they exercise their constitutional right to seek judicial relief. E.g., *Silver v. Cormier*, 529 F.2d 161, 163 (10th Cir. 1976) (threat to withhold monies due and owing because of a lawsuit on an unrelated matter was unconstitutional retaliation); *Cleggett v. Pate*, 229 F. Supp. 818, 821-22 (N.D. Ill. 1964) (individual entitled to "free and unhampered access to the courts"). "An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. Ill. 2005).

Lake County denied the conditional access permit, in **retaliation for filing the litigation** against the Defendants. However, this is not the only retaliation that exists. The WDO licenses enforcement officers, wetland specialist, and erosion inspectors.[6] The enabling legislation does not grant any such licensing power. In fact, the licensing scheme conflicts with § 5-1062(k) by continuing county oversight after a villages adopt a consistent stormwater ordinance. The WDO licensing and recertification allows SMC to retaliate against those who exercise their constitutional rights and was **enacted to chill** access to the courts. The recertification of villages, and professionals is **used to intimidate and chill** those who fails to follow the ever expanding authority of SMC. The recertification of villages, and professionals is invalid, unconstitutional and unenforceable. There is an overwhelming likelihood that the Plaintiff prevail on the merits at trial.

---

[6] The WDO requires village recertification every three years, and grants authority to SMC to "rescind" a community's certification. (Art. III § B pg. 4). The WDO requires certified communities to employ an enforcement officer for "the community to remain certified." (Art. III § B.11 pg 5). The enforcement officer must obtain recertification "every three years through the SMC."(Apx. A pg. 69). A "Certified Wetland Specialist" must pass the Certified Wetland Specialist Exam and seek recertificication every three years. (Apx. A pg. 66). A "Designated Erosion Control Inspector must pass SMC's exam (Apx. A pg. 67). SMC may "suspend" the erosion inspector for non-compliance." (Art. II § C pg. 3).

IV.    **NO ADEQUATE REMEDY AT LAW EXISTS**.

The Plaintiff has no adequate remedy at law for the injuries which the Plaintiff has suffered and will continue to suffer in the future. Unless the Defendant's wrongful conduct is restrained and enjoined, it will be difficult for the Plaintiff to determine the precise amount of damage. Even if those damages are ascertained, it may be too late to save the Plaintiff from imminent demise in bankruptcy.

V.    **PLAINTIFF WILL UNQUESTIONABLY SUFFER IRREPARABLE INJURY IF THE PRELIMINARY INJUNCTION IS NOT ISSUED**.

The "loss of First Amendment freedoms for even minimal periods of time, unquestionably constitutes irreparable injury."*Elrod v. Burns*, 427 U.S. 347, 373-374 (1976). There is no question that if constitutional interests are threatened or in fact being impaired at the time injunctive relief is sought, a preliminary injunction is appropriate. *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976); *Foster v. Kusper*, 587 F. Supp. 1191, 1194 (N.D.Ill. 1984). Unless an injunction is issued, the restraint on the Plaintiff will not be brief, and the interference with Plaintiffs fundamental right of access to the courts will continue.

Generally to establish irreparable harm, the injury must be one requiring a remedy other than money damages. However, in *Doran v. Salem Inn, Inc*, 422 U.S. 922, 932 (1975) the Supreme Court held that the issuance of a preliminary injunction was proper because "absent preliminary relief [the plaintiffs'] would suffer a substantial loss of business and perhaps even bankruptcy. Certainly the latter type of injury sufficiently meets the standards for granting interim relief, for otherwise a favorable final judgment might well be useless."

In *Sperry International Trade, Inc. v Government of Israel*, 670 F.2d 8, 12 (2nd Cir 1982) the court held that "[m]onetary loss might constitute irreparable injury in the exceptional case where a movant shows that the loss would force him into bankruptcy." In *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 971 (2nd Cir 1989) the "Plaintiffs' showing of the partnerships' danger of bankruptcy. . . .had adequately demonstrated to the district court the required irreparable harm." In *Pinnacle Nursing Home v. Axelrod*, 719 F. Supp. 1173, 1181 (W.D. NY 1989) the court held that "To require plaintiffs to delay these motions until bankruptcy is imminent would render their preliminary relief from harm a Pyrrhic victory. Such harm affronts justice when it is effected." In *Transamerica Insurance Finance Corp. v. North American Trucking Assoc., Inc.*, 937 F. Supp. 630, 636 (W.D. KY 1996) the Court held that "the threat of bankruptcy" to plaintiff "constitute irreparable harm" and "if not restrained pending final judgment in this matter, bankrupt the plaintiff without any benefit to the defendants or to the general public."

The Plaintiff has **obtained approval from the Village** to develop Autumn Ridge and has also obtained interim approval to import fill onto the Property. However, Lake County has **denied access** to county roads, and **SMC seeks to redesign** the approved Autumn Ridge subdivision, by requiring more than 54% open space. Unless the Defendant's wrongful conduct is restrained and enjoined, it may be too late to save the Plaintiff from imminent demise in **bankruptcy**. This is the exceptional case where the continued denial of the right to commence construction will force the Plaintiff into bankruptcy. The Plaintiff will suffer imminent, irreparable harm absent the granting of an injunctive relief from this Court. Considering the dynamics of the present real estate market, and the threat of bankruptcy, it is apparent that the Plaintiff has made an extremely strong showing of irreparable injury.

Another reason favoring injunctive relief is the limitation of time within which the Plaintiff must proceed to develop the subdivision. The Plaintiff has already labored for more than four years, and litigating this action on the merits will take a year, or more, and this delay will deny any remedy for the Defendant's desire to regulate outside statutory limits.

It is inconceivable that the development of Autumn Ridge, which is **approved by the Village**, will cause the Defendants to suffer any type of injury of an irreparable nature if, during the time prior to a full hearing, construction is commenced in accordance with the Village approved plans. Because the Defendant's will not suffer any hardship this favors preliminary injunctive relief pending a decision on the merits.

## VI.   THE INUNCTION WILL NOT HARM THE PUBLIC INTEREST.

When a violation of constitutionally protected rights is shown, most courts hold no further showing of irreparable injury is required. *Associated Gen. Contractors of Calif. v. Coalition for Economic Equity*, 950 F.2d 1410, 140 (9th Cir 1991). The presumption of irreparable injury is particularly strong in cases involving infringement of First Ament rights. *Elrod v. Burns*, 427 US 347, 373 (1976). Having shown that the **Village approved the Autumn Ridge subdivision**, and that the Defendants lack jurisdiction to regulate the subdivision, it is apparent that an injunction will not be adverse to the public interest.

The economic benefits of the Autumn Ridge subdivision area also in the public interest. The public interest is also better served by a preliminary injunction that ensures compliance with Village regulations. The Plaintiff does not challenge the statutory authority, on the contrary, the Plaintiff urges that the Defendants **comply with the statute as written**. Forcing the Defendants to comply with the statute as written is in the public interest.

VII.   **ISSUANCE OF AN INJUNCTION WILL PRESERVE THE STATUS QUO**.

Preservation of the status quo is one of the most common bases for issuance of a preliminary injunction. Cases fairly uniformly conclude that where, as here, irreparable injury is present, the crucial question is that of whether a failure to issue the preliminary injunction would cause decidedly greater hardship to the Plaintiff, than to the Defendants, and whether the effect of the preliminary injunction could be undone if the Plaintiff's ultimately loses at trial. Those factors all point to issuance of a preliminary injunction here.

The Plaintiff has **obtained approval from the Village** to develop the 25-lot Autumn Ridge subdivision. The Defendants lack the statutory authority to require modifications to the Autumn Ridge subdivision pursuant to the WDO's wetland regulations. The Army Corps will not regulate the wetlands. Besides, the Autumn Ridge subdivision has already left 54% of the land in open space, and the Defendants lack the authority to require more open space.

The Defendants seek to change the status quo pending trial by obtaining authority to regulate the Autumn Ridge subdivision which is wholly located within the Village of Grayslake. The Defendants do not have any such authority. The purpose of a preliminary injunction is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits. This purpose is furthered by issuance of a preliminary injunction allowing the Plaintiff to proceed with the subdivision pursuant to Village approvals. The Defendants instead desire to halt the Plaintiff from developing a subdivision approved by the Village. The injury to the Plaintiff would clearly outweigh any perceived injury to the Defendants. The balance of hardships favors the Plaintiff as failure to issue the injunction will cause decidedly greater hardship to the Plaintiff than to the Defendants.

VIII.  **CONCLUSION**.

In balancing the hardships in the present case, there can be no question that the scales tip overwhelmingly toward the Plaintiff. The Defendant's can show no hardship whatsoever from the granting of an injunction, while the **harm** that would come to Plaintiff from the denial of injunctive relief would be both **substantial and irreparable**.

WHEREFORE, For all the foregoing reasons, the Plaintiff prays that this Honorable Court issue a preliminary injunction enjoining and restraining the Defendants, their employees, agents, attorneys, servants and anyone acting on their behalf, from denying access to the subdivision and from regulating the wetlands within the Autumn Ridge subdivision.

Dated: June 17, 2008                     Respectfully submitted,

                                         Sebastian Rucci (ND IL No. 90785689)
                                         40 The Ledges, 3C
                                         Youngstown, Ohio 44514
                                         Phone: (330) 707-1182
                                         Fax:    (330) 707-1882
                                         Email: SebRucci@Gmail.com
                                         Attorney for the Plaintiff

### CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2008, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties via the Court's electronic filing system and parties may access this filing through the Court's Case management/Electronic Case Files (CM/ECF) found on the internet at https://ecf.ilnd.uscourts.gov. The foregoing was also emailed directly to Daniel Jasica, the Defendants attorney at DanielJJasica@co.lake.il.us.

                                         Sebastian Rucci (ND IL No. 90785689)