UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAMPUS INVESTMENTS, INC., ) | |
| ) | |
| Plaintiff, ) | Case No. 08-cv-3046 |
| v. ) | |
| ) | Judge George W. Lindberg |
| LAKE COUNTY STORMWATER ) | |
| MANAGEMENT COMMISSION, and ) | Magistrate Judge Arlander Keys |
| LAKE COUNTY, ILLINOIS, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF PARTIAL SUMMARY JUDGMENT**

COMES NOW the plaintiff Campus Investments Inc., by and through its attorney, submits this memorandum in support of its motion for summary judgment on Count One (Declaratory Relief) and in support states the following unto this Honorable Court:

**SUMMARY OF ARGUMENT**

The defendants regulate wetlands inside villages pursuant to 55 ILCS 5/5-1062. The legislative purpose is identified in § 5-1062(a) as floodplain and stormwater management. The state statute comprises 2,504 words, and uses the word "stormwater" fifty-one times, the word "wetland" is notably absent from its language. The defendants flagrant misreading of the state statute is shown by § 5-1062(k) which mandates that "the **county shall not enforce** rules and regulations adopted by the county in any municipality" that has a consistent "stormwater management ordinance." The defendants instead regulate wetlands within the Village of Grayslake, which has a stormwater ordinance, in direct conflict with § 5-1062(k).

The state enabling legislation permits the enactment of "rules and regulations for **floodplain management** and for governing the location, width, course and release rate of all **stormwater runoff** channels, streams and basins in the county." § 5-1062(f). The statute limits the county's authority to **"inspecting stormwater facilities**." § 5-1062(j). The defendants have expanded this limited stormwater authority, and instead regulate wetlands, soil erosion, grading, and municipal planning. The defendants even rely on this limited stormwater authority to license village engineers, wetland scientists and erosion inspectors.

There are no genuine issues of material fact, and Campus is entitled to judgment as a matter of law. The regulation of wetlands within incorporated villages conflicts with the legislative purpose identified in § 5-1062(a), and an unlawful expansion of the limitation of regulation to stormwater in § 5-1062(f), and an unlawful expansion of the limitation of inspections to only stormwater in § 5-1062(j), and in direct conflict with § 5-1062(k) by retaining jurisdiction after a municipality has adopted a consistent stormwater ordinance.

The plain reading of § 5-1062(a), (f), (j) and (k) confirms that the regulation of wetlands within incorporated villages is on it's face plainly invalid, and the defendants lack extraterritorial powers to regulate wetlands on the plaintiff's property.

## MATERIAL FACTS

Campus Investments ("Campus") is the owner of 28.48 acres located at 21157 Rollins Road in the Village of Grayslake (the "Village") in Lake County, Illinois (the "Property"). The property is vacant with seasonal farming and includes an 11.7 acre wetland.

Fifteen years ago the Property was annexed from unincorporated Lake County to Grayslake. The annexation agreement required 13.40 acres to remain in open space.

Six years ago the Army Corps issued a letter stating there are no wetlands under the Corps "jurisdiction at the site" and a Corps permit "is not required." Four years ago, Campus applied to the Village to subdivide the property. Two years later the Village approved a 25-lot subdivision called **Autumn Ridge** which left 15.33 acres, 54% of the land, in open space.

One month after the Village approval, the Lake County Stormwater Management Commission ("SMC") notified Campus that SMC's approval of isolated wetland impacts is required prior to the Village's issuance of a permit. If no impacts will occur, a no impact letter is required. SMC in effect regulates every wetland in Lake County, including ones in villages, by requiring either a permit for direct or indirect impacts, or a letter of no impact.

Campus believed at the outset that SMC lacked authority to regulated wetlands within the Village of Grayslake, but sought to obtain a no impact letter from SMC in an effort to avoid friction, and because they feared retaliation. However, after one years effort in trying to get the ever illusive no impact letter, it became apparent that SMC desired more than 54% of the land to be left in open space. The loss of additional acreage will make subdivision economically non-viable and Campus abandoned its efforts with SMC.

Six weeks ago, Campus obtained approval from the Village to bring fill onto the Property, and started to prepare the site for the importation of fill. Three days later SMC inspected the Property and informed them that they were in violation of the WDO and to "**stop all work**." After the complaint in this case was filed, Lake County refused to issue an access permit, which they approved eight months earlier, and linked the access permit with resolution of the defendants authority over wetlands. Lake County further **retaliated by fencing the Property** and the land is now fenced without any access.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of submitting affidavits and other evidentiary material to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets it's burden, the opposing party must come forward with specific evidence showing there is a genuine issue for trial. *Id* at 324.

This motion complies with this standard in every sense. There are no genuine issues of material fact, and the plaintiff is entitled to judgment as a matter of law.

## LEGAL ANALYSIS

The Defendants regulate wetlands inside villages pursuant to 55 ILCS 5/5-1062. The determination of whether the Defendants wetlands regulation are within the scope of authority granted under § 5-1062 is guided by the following principles: "Counties . . . shall have only powers granted to them by law." Illinois Constitution Art. VII, § 7. "Counties" can "exercise **only those powers expressly granted** to them by the **legislature**." *Redmond v. Novak*, 427 N.E.2d 53, 57-58 (Ill. 1981). The "powers" of "counties, are **not to be enlarged** by liberally construing the statutory grant, but, quite to the contrary, are to be **strictly construed** against the governmental entity." *Inland Land Appr. Fund v. County of Kane*, 800 N.E.2d 1232, 1236 (Ill. App. 2003). "When the statutory language is clear, it must be given effect without resort to other tools of interpretation. In interpreting a statute, it is never proper for a court to **depart from plain language** by reading into a statute exceptions, limitations, or conditions which **conflict** with the clearly expressed legislative intent." *County of Knox v. The Highlands, L.L.C.*, 723 N.E. 2d 256, 263 (Ill. 1999).

Following back-to-back floods in northeastern Illinois in 1986 and 1987, the Illinois General Assembly enacted 55 ILCS 5/5-1062 granting stormwater management powers to northeastern Illinois counties. The state enabling legislation comprises 2,504 words, the word "stormwater" is used fifty-one times, the word "wetland" is absent from its language. The legislative purpose is identified in § 5-1062(a) as follows:

> "[The] **purpose** of this Section shall be achieved by: (1) consolidating the existing **stormwater management** framework into a united, countywide structure; (2) setting minimum standards for **floodplain and stormwater management**; and (3) preparing a countywide plan for the **management of stormwater runoff**, including the management of natural and man-made drainageways."

The enabling legislation provides that a "stormwater management planning committee shall be established by county board resolution." § 5-1062(b).[1] The "county board may prescribe by ordinance reasonable rules and regulations for **floodplain management** and for governing the location, width, course and release rate of all **stormwater runoff** channels, streams and basins in the county." § 5/5-1062(f).

However, the "county **shall not enforce** rules and regulations adopted by the county **in any municipality**" that has a "stormwater management ordinance" consistent with the county ordinance. § 5/5-1062(k). Also, the county may only "enter upon any lands or waters within the county for the purpose of **inspecting stormwater facilities** or causing the removal of any obstruction to an affected watercourse." § 5/5-1062(j).

---

[1] "The principal duties of the committee shall be to develop a **stormwater management plan** for presentation to and approval by the county board." § 5/5-1062(b). The plan must ensure that stormwater projects will not impact "levels or flows of **stormwaters** in inter-county watersheds" or the capacity "**stormwater** retention facilities" in adjacent counties. § 5/5-1062(c). The county plan must comply with state and federal "standards for **floodplain** management." § 5/5-1062(f). The county stormwater plan must also consider "the cumulative effects of **stormwater** discharges on **flood** levels." § 5/5-1062(d).

In December 1987, Lake County established the Lake County Stormwater Management Commission ("SMC"). In June 1990, SMC developed, and Lake County adopted, the Lake County Comprehensive Stormwater Management Plan which was last amended in 2002. On October 18, 1992 Lake County adopted the Watershed Development Ordinance ("WDO") as a component of the Stormwater Management Plan, it was amended seven times, the last amendment was on October 10, 2006. SMC also adopted a companion Technical Reference Manual to assist in using the WDO.

On January 9, 2001 the Supreme Court issued its opinion in *Solid Waste Agency of Northern Cook County v. Army Corps of Eng.*, 531 U.S. 159 (2001) which held that isolated wetlands "not adjacent to open water" are not within the Army Corp's jurisdiction. SMC's Technical Reference Manual § 5.1 notes the affect of this ruling with the following passage:

> "[U]ntil January 9, 2001, wetlands were regulated by the Corps under authority of the federal CWA. On that date, the Supreme Court ruled on the *Solid Waste Agency of Northern Cook County* ("*SWANCC*") case and that ruling effectively **removed the Corps' authority to regulate intrastate, isolated waters/wetlands** not tributary to a navigable waterway. These isolated waters/wetlands represent thousands of acres within Lake County that became at risk for destruction with the *SWANCC* ruling. On August 14, 2001, the Lake County Board amended the [Watershed Development] Ordinance to **protect isolated waters/wetlands within the county that were no longer regulated the Corps** and defined them as Isolated Waters of Lake County."

Seven months after the *SWANCC* decision, SMC amended the WDO and added the protection of isolated wetland in the WDO and defined "Isolated Waters of Lake County" as all "**wetlands that are not under U. S. Army Corps of Engineers jurisdiction**." (WDO Apx. A pg 71). The WDO requires "**no net loss** of wetlands in Lake County" and instead

demand "a net gain of wetlands." (Art. I § B.10). The WDO requires a permit for any impact to isolated wetlands. (Art. IV § E.1.b). The WDO limits impacts to isolated wetlands to 1/10 acre, impacts greater than 1/10 require 6:1 mitigation. (Art. IV § E.4). The WDO requires specialists certified by SMC to delineate wetlands. (Art. IV § E.2-3). "SMC will perform Certified Wetland Specialist duties for communities" until certification. (Art. III § B.12).

The legislative purpose is floodplain and stormwater management, § 5-1062(a), and the county authority is limited to "rules and regulations for **floodplain management**" and **"stormwater runoff** channels, streams and basins." § 5-1062(f). However, the WDO instead regulates wetlands. "A wetland is not a floodplain." *Village Elk Grove v. Evans*, 997 F.2d 328 (7th Cir. 1993). The plain reading of § 5-1062(f) confirms that Lake County enlarged this limited authority over stormwater and floodplain management, and included wetlands.

"It is well established that where the General Assembly has established applicable standards governing the regulation of certain areas, municipalities are **not generally authorized to enact more restrictive regulations** in the absence of specific authority to do so." *Pesticide Public Policy Found. v. Village Wauconda*, 622 F. Supp. 423, 429 (N.D. Ill. 1985) affirmed, 826 F.2d 1068 (7th Cir. 1987). The "powers" of "counties, are **not to be enlarged**" but, quite to the contrary, are to be **strictly construed** against the governmental entity." *Inland Land Appr. Fund v. County of Kane*, 800 N.E.2d at 1236.

"Besides examining the language of an act, a court should look to the evil that the legislature sought to remedy or the object it sought to attain in enacting the legislation." *Stern v. Norwest Mortg.*, 688 N.E.2d 99, 102 (Ill. 1997). As noted above, 55 ILCS 5/5-1062 was

enacted in response to back-to-back floods in northeastern Illinois. Morever, in 1987 at the time the state statue was enacted, isolated wetlands were regulated by the Army Corps, consequently, this was not the object the legislature sought to regulate. The Army Corps did not loose their regulation of isolated wetlands until fourteen years later on January 9, 2001, and the Illinois Legislature has not granted wetland authority to counties since that date.

55 ILCS 5/5-1062(k) provides that "the **county shall not enforce** rules and regulations adopted by the county **in any municipality**" that has a consistent stormwater ordinance. Consequently, the defendants extraterritorial regulation of wetlands within the Village of Grayslake, is in direct conflict with § 5-1062(k). "Grayslake is a certified community for approval and enforcement of the standard (stormwater management) provisions of the WDO." (Amend. Compl Ex. D, E and F). The meaning of "shall not enforce" is certain and unambiguous and free from doubt. Nonetheless, the WDO regulates within villages even if they have adopted an ordinance consistent with the WDO. The WDO grants exclusive authority for certain floodplain issues to SMC. (Art. IV § C-D; Apx E § J.2).

The defendants interpretation of § 5-1062(k) is absurd. The word "shall not" cannot mean "shall." The legislature used limiting language ("shall not regulate") to limit the county's authority. The "legislature knows how to limit the agricultural exemption from zoning regulation by specifying what 'agricultural purposes' do not include." *County Knox*, 723 N.E.2d at 264. The county cannot "**depart from plain language** by reading into the statute exceptions, limitations, or conditions which **conflict** with the clearly expressed legislative intent." *Village of Chatham v. County of Sangamon*, 837 N.E.2d 29, 45 (Ill. 2005).

55 ILCS 5/5-1062(j) provides that the county "may, after 10 days written notice to the owner or occupant, enter upon any lands or waters within the county for the purpose of **inspecting stormwater facilities** or causing the removal of any obstruction to an affected watercourse." The plain reading of § 5-1062(j) confirms that the county does not regular inspection authority. Inspections require ten days notice, and are limited to serious impacts, like the obstructions to watercourses. The WDO instead liberally construes § 5-1062(j) by requiring regular inspections of wetlands, grading, and erosion within all new developments. Once again, the "powers" of "counties, are **not to be enlarged** by liberally construing the statutory grant, but, quite to the contrary, are to be **strictly construed** against the governmental entity." *Inland Land Appr. Fund v. County of Kane*, 800 N.E.2d at 1236.

A comparison of the villages subdivision and zoning powers, with the county's powers, further confirms that the county has no extraterritorial authority to regulate wetlands within villages. Villages have exclusive authority to establish "standards of design for subdivisions" including requirements for "storm water drainage." 65 ILCS 5/11-12-5. And exclusive zoning authority "within the corporate limits" including the power to regulate "storm or floodwater runoff channel or basin." 65 ILCS 5/11-13-1.[2] The county's subdivisions authority is limited to land "not being within" any "village." 55 ILCS 5/5-1041. County zoning is limited to land "outside the limits" of "villages." 55 ILCS 5/5-12001.

---

[2] Villages have the power to determine whether the "plat of subdivision" complies with Village regulations. 65 ILCS 5/11-12-8. The WDO instead commands that a "community's planning commission or corporate authority shall not approve any preliminary" or "final PUD or Plat of subdivision **located inside or outside its corporate limits** unless such PUD or Plat, at a minimum, meets the performance standards of the Lake County Watershed Development Ordinance." (WDO Art. IV § B.1.a.(7) and (8)).

"[E]xtraterritorial governmental powers may only be conferred by the legislature." *County of Will v. City of Naperville*, 589 N.E.2d 1090, 1093 (Ill. App. 1992). The "legislature has granted extraterritorial jurisdiction in limited circumstances." *City of Springfield v. Judith Jones Dietsch Trust*, 746 N.E.2d 1272, 1274 (Ill. App. 2001). The "courts have never permitted a municipality's extra-territorial powers to supersede the governmental unit's exercise of zoning power over land within its own territory." *Aurora National Bank v. City of Batavia*, 414 N.E.2d 916, 920 (Ill. App. 1980). "[U]nrestrained extraterritorial exercise of those powers in zoning, taxation and other areas could create serious problems." *Commercial National Bank of Chicago v. City of Chicago*, 432 N.E.2d 227, 243 (Ill 1982).

In *Village of Chatham v. County of Sangamon*, 837 N.E.2d 29 (Ill. 2005) the county could not assert zoning jurisdiction over land subject to a village annexation agreement, because the legislature granted "jurisdiction to municipalities over properties located in unincorporated areas which are subject to annexation agreements." *Id.* at 47.

In *Wauconda Fire Prot. Dist. v. Stonewall Orchards*, 828 N.E.2d 216 (Ill. 2005) the fire districts ordinance required a sprinkler system, the County's building code did not. *Id.* at 219-20. The county could not rely on the Fire Protection District Act (70 ILCS 705/11) for authority because the term "municipalities" did not include "county" and the county could not enforce its fire prevention code against the property. *Id.* at 223-25.

In *Pesticide Public Policy Foundation v. Village of Wauconda*, 622 F. Supp. 423 (N.D. Ill. 1985) the state pesticide statutes did not delegating authority to villages. The village ordinance imposed additional requirements on individuals who wished to apply pesticides. The court declared the ordinance invalid and enjoined the defendants from enforcing the ordinance. The Seventh Circuit affirmed, 826 F.2d 1068 (7th Cir. 1987).

In *Village of Lake Bluff v. Jacobson*, 454 N.E.2d 734 (Ill. App. 1983) the village sought to enforce its subdivision ordinance to stop the construction of an apartment building located in unincorporated Lake County within 1-1/2 miles of the village's corporate limits. The court noted that "in pure subdivision regulation matters the **city's subdivision regulations would preempt any county ordinances** within the 1-1/2-mile zone." *Id.* at 738. See also, *County of Kendall v. Avery Gravel Co.*, 463 N.E.2d 723 (Ill. 1984) (IEPA regulations preempted county zoning ordinances relating to strip mining); *American Smelting & Refining Co. v. County of Knox*, 324 N.E.2d 398 (Ill. 1974) (county could not regulate strip mining with requirements more stringent than those imposed by state statute); *Bridgman v. Korzen,* 295 N.E.2d 9 (Ill. 1972) (ordinance invalid for requiring tax payment in four installments, state statute required two installments.)

There is extensive language in 55 ILCS 5/5-1062 to display it is of limited authority. First, it is limited to the five counties "served by the Northeastern Illinois Planning Commission." § 5/5-1062(a). Second, it "specifically denies and limits the exercise of any power which is inconsistent herewith by home rule units." § 5/5-1062(o). Third, it "does not prohibit the concurrent exercise of powers consistent herewith." § 5/5-1062(o). Fourth, "the county shall not enforce rules and regulations adopted by the county in any municipality" that has a consistent "stormwater management ordinance." § 5/5-1062(k). Fifth, the county may after ten days written notice, enter lands for the limited "purpose of inspecting stormwater facilities." § 5/5-1062(j). Sixth, the county regulations are limited to "rules and regulations for floodplain management" and the "location, width, course and release rate of all stormwater runoff channels, streams and basins in the county." § 5/5-1062(f).

The Defendants reading of the statute would **give them a blank check** to enact whatever rules and regulations they deem proper. The Defendants have relied on the statute to enact wetland regulation, land planning, and erosion control. The Defendants even rely on the stormwater statute to license village engineers, wetland scientists and erosion inspectors. The Defendants surely cannot believe that these very expansive powers are found within a statute enacted in response to flooding, that does not even mention the word wetland, licensing or erosion. The plain reading of § 5/5-1062 does not expressly give the Defendants these powers. Nor does the power arises by implication. It simply does not exist.

By comparison, the Army Corps does not rely on flood plain or stormwater management for authority to regulate wetlands. The Corps wetland authority comes from the Clean Water Act. *SWANCC*, 531 U.S. at 166 ("Congress passed the [Clean Water Act] for the stated purpose of 'restoring and maintaining the chemical, physical, and biological integrity of the Nation's waters.'") This purpose is substantially different than the one stated in § 5-1062(a) (purpose is regulation of floodplain and stormwater management).

The Supreme Court has limited the Corps wetland authority when they sought to regulate outside their limited jurisdiction. See *SWANCC*, 531 U.S. at 174 (isolated wetlands not within the Corps jurisdiction); *Rapanos v. United States*, 547 U.S. 715, 757 (2006) (wetlands without substantial nexus outside Corps jurisdiction). Chief Justice Roberts castigated the Corps for not adopting new rules after their prior loss in the SWANCC case, noting that the "Corps chose to adhere to its essentially boundless view of the scope of its power. The upshot today is another defeat for the agency." *Rapanos*, 547 U.S. at 758 (Roberts C.J. concurring). The Defendants unprecedented intrusion into traditional village powers, is similarly fraught with an "essentially boundless" view of the scope their authority.

The Defendant's have demonstrated remarkable reluctance in applying the very simple language of the state stormwater statute. Their interpretation betrays adherence to the very language. The flagrant reading of the statute brings to mind the Supreme Court admonition if "a policeman must know the Constitution, then why not a planner?" *San Diego Gas & Electric Co. v. San Diego*, 450 U.S. 621, 661 n26 (1981). Lake County's brochure titled "Wetlands" informs landowners about wetland regulations, and states that "Lake County Engineering and Environmental Services has **jurisdiction only in the unincorporated areas of Lake County**. For incorporated properties, contact the appropriate municipality." (www.co.lake.il.us/elibrary/publications/planning/pdfs/wetlands1.pdf). Defendants clearly recognize that they regulates in excess of the specific, express grant of statutory authority.

The Defendants have increased their authority after each of the seven amendments to the WDO. The Defendants desires to impose wetland regulations on the Property that will render the development economically non-viable. The Property is now fenced and incapable of economically viable use.[3] Lake County is now demanding that Campus comply with SMC's regulations as a condition for access to its Property. The Lake County Highway Access Reg. Ordinance § 3.12 actually allows such retaliation with the following passage:

---

[3] In *Harris Bank of Roselle v. Village of Mettawa*, 611 N.E.2d 550 (Ill. App. 1993) the plaintiffs land was located in Lake County adjacent to the village limits. *Id.* at 552. The village passed an ordinance prohibiting access to certain roads. *Id.* at 554. The ordinance had extraterritorial impact because it denied access to plaintiff's extraterritorial land. *Id.* at 560. Denying access "is tantamount to zoning of the subject property by the village." *Id.* And the village "has no authority to zone property which lies outside its territorial limits." *Id.*

"The County Engineer shall also have the **authority to delay the issuance of permits** if the property served by the permitted work or facility is in violation of or has not complied with the provisions of the Access Ordinance or **any other ordinance**, statute, regulation or administrative order **that may apply to such property**."

Campus has gone through the procedural gauntlet, and it has now filed a meritorious legal challenge to the Defendants extortion of wetlands without legal authority. Lake County has retaliated by requiring Campus to preserve additional acreage in open space, after already agreeing to keep 54% of the land in open space, as a condition of access. Lake County approved access to the Property eight months ago without any wetland conditions. Lake County has imposed an unconstitutional condition on the right of access.[4]

The defendants efforts to preserve wetlands is without statutory authority. This "is not a valid regulation of land use but '**an out-and-out plan of extortion**.'" *Nollan v. California Coastal Commn*, 483 U.S. 825, 837 (1987). Extortion is defined in 18 U.S.C. § 1951 as the obtaining the property from another, **with his consent**, induced by wrongful use of actual or threatened **fear of economic harm**, or under color of official right. Campus has a constitutional right to be free from the extortion of wetlands without compensation, and Campus is now in fear of economic harm, and possible bankruptcy.

---

[4] The Supreme Court in *Dolan v. City of Tigard*, 512 U.S. 374 (1994) stated that under the doctrine of "unconstitutional conditions" the "government may not require a person to give up a constitutional right -- here the right to receive just compensation when property is taken for a public use -- in exchange for a discretionary benefit conferred by the government where the benefit sought has little or no relationship to the property." *Id*, at 385. A "strong public desire to improve the public condition [will not] warrant achieving the desire by a shorter cut than the constitutional way of paying for the change." *Id.*, at 396.

As fully shown above, there are no genuine issues of material fact, and Campus is entitled to judgment as a matter of law. The WDO provisions that regulate wetlands within incorporated villages (Art IV § E) conflict with the legislative purpose identified in § 5-1062(a), the wetlands provisions are an unlawful expansion of the limited authority granted over stormwater in § 5-1062(f), and an unlawful expansion of the limited authority over stormwater inspections granted in § 5-1062(j), and in direct conflict with § 5-1062(k) by retaining jurisdiction after a municipality has adopted a consistent stormwater ordinance. The plain and logical reading of § 5-1062(a), (f), (j) and (k) confirms that the Defendants regulations of wetlands within incorporated villages is on it's face plainly invalid.

WHEREFORE, Campus Investments prays that this Honorable Court enter summary judgment in its favor on Count One and enter an order declaring that the provisions in the WDO that regulate isolated wetlands within incorporated villages (Art IV § E) are an improper extension of the power granted to the Defendants under 55 ILCS 5/5-1062, and therefore, invalid, unenforceable and unconstitutional as applied to the plaintiff's Property.

Dated: July 1, 2008                    Respectfully submitted,

*Sebastian Rucci*
Sebastian Rucci (ND IL No. 90785689)
40 The Ledges, 3C
Youngstown, Ohio 44514
Phone: (330) 707-1182
Fax:   (330) 707-1882
Email: SebRucci@Gmail.com
Attorney for plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2008, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties via the Court's electronic filing system and parties may access this filing through the Court's Case management/Electronic Case Files (CM/ECF) found on the internet at https://ecf.ilnd.uscourts.gov.

*Sebastian Rucci*
Sebastian Rucci (ND IL No. 90785689)