## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CAMPUS INVESTMENTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08-cv-3046 |
| v. | ) | |
| | ) | Judge George W. Lindberg |
| LAKE COUNTY STORMWATER | ) | |
| MANAGEMENT COMMISSION, and | ) | Magistrate Judge Arlander Keys |
| LAKE COUNTY, ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### AFFIDAVIT OF GREG WALLER
### IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

I, Greg Waller, being duly sworn, declare:

1.      I am the president of Campus Investments, the plaintiff in the above entitled action, and I have personal knowledge of the matters contained herein.

2.      I have read the Verified Amended Complaint that was filed with this court, and all of the allegations in the Verified Amended Complaint are true and correct, and I incorporate by reference all of the allegations of the Verified Amended Complaint and do not repeat them here.

3.      I have been involved in the real estate development in Illinois, Missouri and Ohio for more than ten years, specializing in developing residential land.

4.      Campus Investments is the owner of 28.48 acres of real property located at 21157 Rollins Road, in the Village of Grayslake, in Lake County, Illinois (the "Property").

5.     On February 5, 1993, the Property was annexed from unincorporated Lake County to Grayslake. The annexation agreement includes a plat for the property which shows 13.40 acres in conservation area. The wetland report attached to the annexation agreement states that the one wetland on the property comprises 11.7 acres. Paragraph 6 of the annexation agreement provides that the conservation area on the final plat "will generally resemble the area delineated on the tentative plat." Paragraph 9 allows that the conservation "Area may be used for stormwater management purposes."

6.     Attached as Exhibit A, is a comparison of the annexation delineation, and the Autumn Ridge delineation. The two "resemble" each other as agreed in the annexation agreement (Autumn Ridge has 15.33 acres vs. 13.40 acres at annexation). The Autumn Ridge open space mirrors the delineation in the annexation agreement.

7.     Campus submitted the first General Development Plan to the Village of Grayslake for the development of the Autumn Ridge subdivision on June 2, 2005. On November 14, 2005 the Plan Commission recommend approval, and on February 7, 2006, the Village Board approved the General Development Plan and granted a Special Use Permit ("SUP") for Autumn Ridge. On February 21, 2006 Campus Investments and the Village of Grayslake signed the SUP agreement for the development of Autumn Ridge.

8.     The SUP incorporated the General Development Plan as Exhibit B and provides that the "General Development Plan constitutes the preliminary planned unit development plat and the preliminary plat of subdivision for the Property." The SUP also incorporated the approved Preliminary Engineering plans as Exhibit E, and provided that the "approved Preliminary Engineering plans are attached as Exhibit E.

9.     The SUP states that Campus Investments "agreed to construct 25 detached single-family residences in accordance" with "the General Development Plan hereby attached as Exhibit B." (SUP Recital C pg. 1). The SUP also states that the "Final Plat shall be in substantial conformance with the approved General Development Plan hereby attached as Exhibit B." (SUP Recital D pg 1). The Final Engineering Plans "shall be in substantial conformance with the approved Preliminary Engineering." (SUP § 17.2 pg. 16).

10.     The Final Engineering Plans submitted to the Village are "in substantial conformance with the approved Preliminary Engineering." (SUP § 17.2 pg. 16). The Final Plat submitted to the Village is also in "substantial conformance with the approved General Development Plan." (SUP Recital D pg 1).

11.     Section 20 of the SUP provides that "Developer agree that they will not seek and do not have the right to seek to recover a judgment for monetary damages against the Village or any elected or appointed officials, officers, employees, agents, representatives, engineers, or attorneys thereof, on account of the negotiation, execution, or breach of any of the terms and conditions of this Agreement." (SUP § 20 pg. 17).

12.     Campus Investments believed at the outset that SMC lacked authority to regulated wetlands within the Village of Grayslake, but sought to obtain a no impact letter from SMC in an effort to avoid friction, and because Campus feared retaliation. However, after one years effort with SMC, it became apparent that SMC desired more than 54% of the land to be left in open space and Campus abandoned it's efforts with SMC.

13.    Access to the Rollins Road property has always been from Rollins Road for over a half century, ever since Rollins Road was first constructed. On June 16, 2008 we commenced the importation of fill onto the property, after we received approvals from the Village of Grayslake to import fill. The importation of fill was peaceful and did not create any issues, we kept the road clean.

14.    On July 18, 2008 at around 11:00 three men who said that they were from the Lake County Department of Highways and Traffic, but would not give us their names, informed Campus Investments that they were shutting down the access to the property from Rollins Road. The Lake County DOT supervisor said that he had an email from Betsey Duckert ordering him to shut down the activity at the property.

15.    Campus informed the unnamed Lake County DOT supervisor that we had a lawful right to the access and that an injunction was pending in court for next Wednesday. He called the County Sheriff and said he would have everyone arrested.

16.    The County Sheriff came to the site and said he did not have jurisdiction in the Village of Grayslake, but would stay to make certain there was no trouble. We assured him we disagreed, but that our disagreement was peaceful.

17.    The unnamed Lake County DOT person then started to put an orange snow fence up at the property preventing anyone from getting, or getting out of the property. At the time the fence was being put up contractors were on the property. All contractors exited the property and the orange snow fence was put up preventing all access to the property.

18.     The unnamed Lake County supervisor was asked for some writing regarding this fence installation, and he told us that Betsey Duckert informed him that the access would be permitted when the wetland issues are resolved with SMC and to talk to her.

19.     The fill material is only available when a construction site has excess and unless the Plaintiff imports the fill, it will lose the fill to other developments. This will result in damages to the Plaintiff in over One Million Dollars.

20.     SMC has confirmed that they intend on regulating the isolated wetlands on the Property, and will not allow Campus Investments develop the Property as approved by the Village, and will to fill the low quality isolated wetlands and that the same must remain in permanent open space.

21.     SMC seeks to require that more than 54% of the Property be left in its natural state, thereby, destroying all economical value of the Property, and the taking of additional acreage by SMC will make residential development of the Property financially unfeasible.

22.     Campus Investments has worked tirelessly on the development of this property for over four years, and unless SMC is told to but out of the incorporated Villages planning, Campus Investments will have to seek Bankruptcy Court protection, because it does not have the financial resources to pay the mortgage, without the sale of the Property.

23.     Bankruptcy will limit Campus Investments' ability to compete in the marketplace in the future and will severely limit its ability to maintain any level of business in the present. The interference by SMC has a devastating effect on Campus Investments financial condition. Campus Investments will suffer imminent, irreparable harm absent the granting of an order from this Court.

24.    Lake County Highway Access Regulation Ordinance, last amended November 12, 2002 provides in Section 3.12 titled "Violations and Penalties" as follows: "The County Engineer shall also have the **authority to delay the issuance of permits** if the property served by the permitted work or facility is in violation of or has not complied with the provisions of the Access Ordinance or any other ordinance, statute, regulation or administrative order that may apply to such property."

25.    The many statements from Lake County and SMC, and their efforts and discussions since, have made it clear to me that no development of the Property will be approved without court intervention.

26.    If sworn as a witness I could competently testify to the foregoing.

_____
Greg Waller


STATE OF OHIO              )
                           ) S.S.
COUNTY OF MAHONING         )


Subscribed and sworn to before me this 1st day of July, 2008.

_____
Robert Neill, Notary Public



**ROBERT NEILL**
Notary Public
In and for the State of Ohio
My Commission Expires
June 25, 2008


Page 6 of 6

# Tanamara
*Village Of Grayslake, Illinois*

EXHIBIT A, PG 1



EXHIBIT A, PG 2

Rollins   ROLLINS   ROAD

Lot 1
SQ FT
21425.0081

Lot 2
SQ FT
20162.0450

Lot 3
SQ FT
24824.5820

Lot 19
SQ FT
48190.26

Overlook

Lot 4
SQ FT
24825.3916

CONSERVANCY
AREA

Lot 18
SQ FT
27824.2955

Lot 22
SQ FT
12598.9885

Lot 20
SQ FT
21547.0484

Lot 5
SQ FT
12839.778

Lot 17
SQ FT
26194.781

Overlook

Lot 23
SQ FT
12600.0151

Lot 6
SQ FT
12600

Lot 16
SQ FT
27735.661

Lot 21
SQ FT
14715.255

Lot 24
SQ FT
12600.0151

Court

Lot 7
SQ FT
12600

Lot 15
SQ FT
27735.661

Lot 25
SQ FT
13287.057

Lot 8
SQ FT
12820.0834

Lot 14
SQ FT
27735.661

Lot 9
SQ FT
33083.2441

Lot 13
SQ FT
25490.9981

Lot 12
SQ FT
22514.6896

CONSERVANCY
AREA

Lot 11
SQ FT
24284.0696

Drive

Lot 10
SQ FT
14200.185

Outlot "A"
13.40 Acres

AREA   RESERVED   FOR
DETENTION   POND

RETENTION POND AREA

EXHIBIT A, PG 3



EXHIBIT A, PG 5



