UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAMPUS INVESTMENTS, INC., ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> LAKE COUNTY STORMWATER ) <br> MANAGEMENT COMMISSION, and ) <br> LAKE COUNTY, ILLINOIS, ) <br> ) <br> Defendants. ) <br> ) | Case No. 08-cv-3046 <br><br> Judge George W. Lindberg <br><br> Magistrate Judge Arlander Keys |

**STATEMENT OF MATERIAL FACTS**

COMES NOW plaintiff Campus Investments, Inc., and offer this Statement of Material Facts in support of Partial Summary Judgment on Count One and state as follows:

1. The Amended Complaint ("the Complaint") asserts original jurisdiction in this under 28 U.S.C. §§ 1332 and §1367(a) (Counts 1 and 5) and 28 U.S.C. §§ 1331, 1343 (Counts 2-4). Personal jurisdiction and venue is predicated upon 28 U.S.C. § 1391(a) and (b).

2. Campus Investments, Inc., is an Ohio corporation, engaged in real estate development with its principal office in Ohio ("Campus"). (Compl. ¶ 4).[1]

3. Lake County, is a political governmental entity. The Lake County Stormwater Management Commission ("SMC") is an agency of Lake County (collectively "the Defendants.") (Compl. ¶ 5-6).

---

[1] The Verified Amended Complaint is noted as the Compl. ¶ xx; Exhibits are noted Compl. Ex. xx.; Waller Affidavit is noted as Waller Aff. ¶ xx.

Page 1

4.	Campus is the owner of 28.48 acres, at 21157 Rollins Road, in the Village of Grayslake, in Lake County, Illinois (the "Property"). The property is vacant, with seasonal farming. The Property is surrounded by residential homes, other vacant land and a school. The Property fronts onto Rollins Road and has a curb cut along the road and access to the Property has been from Rollins Road for many decades. (Compl. ¶ 31).

5.	Fifteen years ago, on February 5, 1993, the Property was annexed from unincorporated Lake County to Grayslake. The property is vacant, with seasonal farming. The Property is surrounded by residential homes, vacant land and a school. The Property fronts onto Rollins Road and access has always been from Rollins Road. (Compl. ¶ 31).

6.	About one half of the Property is an isolated wetland. Six years ago, on May 17, 2002, the Army Corps of Engineers issued a letter stating that there are no "wetlands or other areas considered 'waters of the United States' under Corps of Engineers jurisdiction at the site" and a Corps permit "is not required." (Compl. ¶ 32, Ex. A).

7.	Five years ago, on April 29, 2003 Lake County acquired right-of-way from the prior land owner, and agreed to "grant one major access to the property." (Compl ¶ 45 Ex G).

8.	Four years ago, Campus applied to the Village of Grayslake to subdivide the property into twenty-five lots. (Compl ¶ 55). Two years later, on February 21, 2006, the Village of Grayslake approved a Special Use Permit to subdivide the Property into a 25-lot subdivision named Autumn Ridge ("Autumn Ridge"). (Compl ¶ 34). Autumn Ridge left 54% of the Property in open space (Compl ¶ 34, Ex. B).

9. The Autumn Ridge has 15.33 acres of open space which exceeded the agreed open space of 13.40 acres shown in the annexation agreement. Also, the wetland delineation in Autumn Ridge mirrors the delineation in the annexation agreement. (Waller Aff. ¶ 5-6).

10. 55 ILCS 5/5-1062(b) provides that a "stormwater management planning committee shall be established by county board resolution." The committee shall "develop a stormwater management plan for presentation to and approval by the county board." *Id.* Pursuant to § 5-1062 Lake County established SMC. (Compl ¶ 10).

11. In June 1990, SMC developed, and Lake County adopted, the Lake County Comprehensive Stormwater Management Plan, it was last amended in 2002. *www.co.lake.il.us/elibrary/publications/smc/StormWater2002CompPlan.pdf*. (Compl. ¶ 10).

12. On Oct. 18, 1992 Lake County enacted a Watershed Development Ordinance ("WDO"). It was amended seven times. Last amendment was adopted on October 10, 2006. See www.co.lake.il.us/elibrary/publications/smc/wdo2006_appcmod.pdf. (Compl. ¶ 11). Graylake has adopted the stormwater regulations provided for in the WDO. (Compl. ¶ 22).

13. "[U]ntil January 9, 2001, wetlands were regulated by the Corps under authority of the federal CWA. On that date, the Supreme Court ruled on the *Solid Waste Agency of Northern Cook County* case and that ruling effectively removed the Corps' authority to regulate intrastate, isolated waters/wetlands not tributary to a navigable waterway. . . On Aug.14, 2001, the Lake County Board amended the [Watershed Development] Ordinance to protect isolated waters/wetlands within the county that were no longer regulated the Corps and defined them as Isolated Waters of Lake County." Tech. Ref. Manual § 5.1 (Comp ¶ 16).

14. On August 14, 2001 SMC amended the WDO and defined isolated wetlands as "Isolated Waters of Lake County" which includes all "wetlands that are not under U. S. Army Corps of Engineers jurisdiction." (WDO Apx. A). The WDO required "**no net loss** of wetlands in Lake County." (Art. I § B.10). "SMC will perform Certified Wetland Specialist duties for communities" until certification. (Art III § B.12). The WDO requires isolated wetlands to remain in their natural state, and limits impacts to 1/10 acre; impacts greater than 1/10 require mitigation. (Art IV § E.4). The WDO requires a permit for impacts to isolated wetlands, and specialists certified by SMC to delineate the wetlands. (Art. IV § E.1-3).

15. SMC requires a permit for wetland impacts, or a letter of no impact, effectively regulating every wetland in Lake County within incorporated villages. (Compl ¶ 18). The WDO regulates all "wetlands that are not under U. S. Army Corps of Engineers jurisdiction."

16. One month after the Village approved Autumn Ridge, SMC notified Campus that "SMC's approval of isolated wetland impacts (or a no wetland impact determination) is required prior to the Village's issuance" of a permit. A permit is required for direct or indirect impacts, if "no direct or indirect impacts" will occur, a no impact letter from SMC is required, and SMC will make "wetland compliance inspections." (Compl ¶ 35-37 Ex C-E).

17. Campus sought to obtain approval from SMC for a no impact letter, and after one years effort, it became apparent to Campus that SMC desired more than 54% of the Property be left in its natural state. The loss of additional acreage will make residential development of the Property financially unfeasible and destroy all economical value of the Property. (Compl. ¶ 39).

18.　SMC did not make any individualized determination that the preservation of more than 54% of the Property, or that the low quality wetlands, are related both in nature and extent to the impact of the proposed development. The burden of preserving more than 54% of the Property, or the low quality wetlands, is not roughly proportional, nor directly proportional, to the development's impact. (Compl. ¶ 40-41).

19.　On May 24, 2008 Campus installed a silt fence at the open space perimeter for erosion purposes in order to commence the importation of fill. Three days later, On May 27, 2008 SMC inspected the Property and informed Campus that the work was in violation of the WDO and to "stop all work." (Compl ¶ 43-44).

20.　After this case commenced, Lake County refused to issue the major access permit, or a temporary access, until the wetland issues are resolved. (Compl. ¶ 46). Lake County has since fenced the Property to prevent any access. (Waller Aff. ¶ 14-18). Eight months earlier, on October 23, 2007, Lake County approved major access permit to allow Autumn Ridge access to Rollins Road. (Compl. ¶ 45).

21.　Lake County Highway Access Regulation Ordinance provides in Section 3.12 titled "Violations and Penalties" as follows: "The County Engineer shall also have the **authority to delay the issuance of permits** if the property served by the permitted work or facility is in violation of or has not complied with the provisions of the Access Ordinance or any other ordinance, statute, regulation or administrative order that may apply to such property." (Waller Aff. ¶ 24).

22.　Autumn Ridge is a multi-million dollar investment; the construction build-out will exceed $15 Million. Autumn Ridge has no adverse impact on nearby properties, and will

instead increase the values of nearby properties. (Compl. ¶ 34). Campus has worked to develop Autumn Ridge for over four years, it has invested over $1 Million Dollars in the development of the Property, and it does not have the financial resources to keep the Property idle pending final resolution of this case, forcing Campus to seek Bankruptcy Court protection. (Compl. ¶ 55).

23. The Special Use Permit that Campus Investment signed with the Village of Grayslake provides in Paragraph 20 that "Developer agree that they will not seek and do not have the right to seek to recover a judgment for monetary damages against the Village or any elected or appointed officials, officers, employees, agents, representatives, engineers, or attorneys thereof, on account of the negotiation, execution, or breach of any of the terms and conditions of this Agreement."

Dated: July 1, 2008                                 Respectfully submitted,

*Sebastian Rucci*
Sebastian Rucci (ND IL No. 90785689)
40 The Ledges, 3C
Youngstown, Ohio 44514
Phone: (330) 707-1182
Fax:    (330) 707-1882
Email: SebRucci@Gmail.com
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2008, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties via the Court's electronic filing system and parties may access this filing through the Court's Case management/Electronic Case Files (CM/ECF) found on the internet at https://ecf.ilnd.uscourts.gov..

*Sebastian Rucci*
Sebastian Rucci (ND IL No. 90785689)